**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Guy Jerome URSERY, Defendant–
Appellant.**

No. 94–1127.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 24, 1995.

Decided July 13, 1995.

Robert Haviland, Asst. U.S. Atty., Marlene Juhasz (argued and briefed), Asst. U.S. Atty., Office of the U.S. Atty., Flint, MI, for plaintiff-appellee.

Lawrence J. Emery, Lawrence J. Emery, P.C., Lansing, MI (argued and briefed), for defendant-appellant.

Before: JONES, CONTIE, and MILBURN, Circuit Judges.

JONES, J., delivered the opinion of the court, in which CONTIE, J., joined. MILBURN, J. (pp. 576–580), delivered a separate dissenting opinion.

NATHANIEL R. JONES, Circuit Judge.

Defendant Guy Jerome Ursery is appealing his conviction and sentence for manufacture of marijuana on several grounds. Because we find that the civil forfeiture judgment followed by a criminal conviction in this case constitute double jeopardy, we reverse the decision of the district court. Because we find this issue to be dispositive, we decline to reach the other issues raised by Ursery in this appeal.

## I. Background

In May 1992, the ex-fiancee of Defendant Ursery's son, Heather McPherson,[1] informed the Michigan State Police that Ursery grew marijuana on his property. Based on this information and further investigation by the police, the police obtained a warrant to search the Ursery home. On July 30, 1992, officers executed the warrant and seized 142 marijuana plants growing in six plots from a field to the west of the rural home. While the police initially believed that the field was part of Ursery's property, it was later determined that three of the plots were 25 feet from Ursery's property line and the other three plots were about 150 feet away from the property line. The plants ranged in height from about six inches to two feet. From the Ursery residence, the police obtained an ammunition case with two plastic bags filled with marijuana seeds, two loaded firearms, a box with ten plastic bags containing marijuana seeds, marijuana stems and stalks, and a growlight.

On September 30, 1992, the United States Attorney's office in Detroit instituted a civil forfeiture action against Ursery and his wife. The government brought the action pursuant to 21 U.S.C. § 881(a)(7)[2] and sought forfeiture of the Ursery residence. The action was brought before Judge Lawrence Zatkoff of the United States District Court for the Eastern District of Michigan and was placed on the court's civil docket. The government served a seizure warrant for the Ursery residence on Ursery at his residence on October 2, 1992. Judge Zatkoff conducted a scheduling conference on November 9, 1992, and scheduled trial for July 1993. The Userys and the government entered into a settlement in which the Userys agreed to pay the government $13,250.00. A consent judgment

was entered on May 24, 1993. The Userys paid the judgment on June 17, 1993.

During this time, on February 5, 1993, a federal grand jury in the Eastern District of Michigan returned a criminal indictment which charged Ursery with one count of manufacture of marijuana in violation of 21 U.S.C. § 841(a)(1). Ursery's pretrial motions for an evidentiary hearing and to suppress evidence, for disclosure of informant, and to strike the mandatory minimum sentence provision were denied following argument on June 16, 1993. The case was originally assigned to Judge Stewart A. Newblatt, but was reassigned to Judge Avern Cohn for trial. Jury trial commenced on June 30, 1993 and the jury returned a guilty verdict on July 2, 1993. Ursery's posttrial motions for a new trial and for dismissal on double jeopardy grounds were denied on September 13, 1993. On January 19, 1994, Judge Cohn sentenced Ursery to 63 months imprisonment and four years of supervised release. On March 21, 1994, Judge Cohn granted Ursery's request for bond pending appeal.

## II. Discussion

■ Ursery argues that his criminal prosecution and punishment after settlement of a civil forfeiture proceeding based on the same conduct violated the Double Jeopardy Clause of the Fifth Amendment. This court reviews *de novo* the constitutional issue of double jeopardy. *Costo v. United States*, 904 F.2d 344, 346 (6th Cir.1990).

### A. No Waiver

We address first, however, the government's argument that Ursery has waived his claim of double jeopardy. Ursery first raised his claim of double jeopardy in a posttrial Motion for Dismissal. The government argues that Federal Rule of Criminal Proce-

---

1. McPherson was Brian Ursery's girlfriend and later fiancee from September 1989 to February 1992.

2. This section provides the following:
All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission

of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
21 U.S.C. § 881(a)(7) (1988).

dure 12 requires that motions which object to the institution of the proceedings must be raised prior to trial or they are waived. *See* Fed.R.Crim.P. 12(b)(1). Rule 12 also explicitly states that "the court for cause shown may grant relief from the waiver." *See* Fed. R.Crim.P. 12(f).

■ Our response to the government's argument is twofold. First, we note that although the government raised this issue of waiver below, the district court did not deem Ursery's double jeopardy argument waived, but addressed the merits of the issue. As such, we are entitled to review this as an issue that was passed upon below.[3] Second, we find that Ursery has shown cause for not raising the Double Jeopardy issue prior to trial in indicating that the Supreme Court's decision in *Austin v. United States,* — U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), which clarified its position that any civil forfeiture under 21 U.S.C. § 881(a)(7) constitutes punishment, was decided on June 28, 1993, a mere two days before Ursery's criminal trial commenced. Thus, we find that Ursery did not waive his double jeopardy claim, and we turn to the merits of his claim.

### B. Protection of the Double Jeopardy Clause

■ "[T]he Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). As the Ninth Circuit has recently noted, "at its most fundamental level [the Double Jeopardy Clause] protects an accused against being forced to defend himself against repeated attempts to exact one or more punishments for the same offense." *United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210, 1215 (9th Cir.1994). To decide whether the government has violated Ursery's constitutional right this court must make three key determinations: (1)

whether the civil forfeiture in the instant case constitutes *"punishment"* for double jeopardy purposes; (2) whether the civil forfeiture and criminal conviction are punishment for *the same offense;* and (3) whether the civil forfeiture and criminal prosecution are *separate proceedings.* Because we find the answer to each of these questions to be in the affirmative, we hold that Ursery's criminal conviction is a second punishment that violates the Double Jeopardy Clause.

The district court denied Ursery's motion for dismissal on double jeopardy grounds stating the following:

The forfeiture proceeding was settled by a consent judgment. That is not an adjudication. Furthermore, the forfeiture proceeding and criminal conviction were "part of a single, coordinated prosecution of [a] person[ ] involved in alleged criminal activity." *United States v. Millan,* [2 F.3d 17, 20] (2d Cir.1993).

J.A. at 29–30. For the reasons that follow, we reverse this holding of the district court.

### C. Jeopardy Attached

■ Before addressing the three key questions of the double jeopardy analysis outlined above, we note our first disagreement with the district court: the fact that the civil forfeiture proceeding was settled by a consent judgment does not preclude a double jeopardy analysis here. The consent judgment in the forfeiture proceeding was an adjudication for double jeopardy purposes because jeopardy attached when the judgment of forfeiture was entered against Ursery.

■ Ursery's consent judgment in his civil forfeiture action is analogous to a guilty plea entered pursuant to a plea agreement in a criminal case. Although in jury trials, jeopardy attaches when the jury is sworn, *Crist v. Bretz,* 437 U.S. 28, 38, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24 (1978), and in nonjury trials jeopardy attaches "when the court begins to hear evidence," *Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d

---

**3.** Even if the district court had not addressed the merits of this issue, we still would be entitled to reach this issue where we find that " 'injustice might otherwise result.' " *See Singleton v. Wulff,*

428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) (quoting *Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941)).

265 (1975), jeopardy attaches to a guilty plea pursuant to a plea agreement upon the *court's acceptance* of the plea agreement. *United States v. Smith,* 912 F.2d 322, 324 (9th Cir.1990); *United States v. Kim,* 884 F.2d 189, 191 (5th Cir.1989); *Fransaw v. Lynaugh,* 810 F.2d 518, 523 & n. 9 (5th Cir.) (collecting cases), *cert. denied,* 483 U.S. 1008, 107 S.Ct. 3237, 97 L.Ed.2d 742 (1987); *United States v. Vaughan,* 715 F.2d 1373, 1378 n. 2 (9th Cir.1983). The fact that there has been no trial in which a jury is sworn or the court hears evidence does not preclude jeopardy from attaching to a plea entered pursuant to a plea agreement. Similarly, the fact that there has been no trial in a civil forfeiture proceeding does not preclude the attachment of jeopardy to a forfeiture judgment. Jeopardy attaches in a nontrial forfeiture proceeding when the court accepts the stipulation of forfeiture and enters the judgment of forfeiture. *See United States v. Tamez,* 881 F.Supp. 460, 466 (E.D.Wash. 1995) (holding that jeopardy attached to stipulated civil forfeiture when court entered the decree of forfeiture).

Nor does the Seventh Circuit's holding in *United States v. Torres,* 28 F.3d 1463, 1465 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994), support the argument that jeopardy did not attach to the judgment of forfeiture in the instant case. In *Torres* the Seventh Circuit held the following:

> Torres received notice inviting him to make a claim in the civil forfeiture proceeding. He did not. As a result, he did not become a party to the forfeiture. There was no trial; the $60,000 was forfeited without opposition, and jeopardy did not attach. You can't have double jeopardy without a former jeopardy. *Serfass v. United States,* 420 U.S. 377, 389, 95 S.Ct. 1055, 1063, 43 L.Ed.2d 265 (1975). As a non-party, Torres was not at risk in the forfeiture proceeding, and "[w]ithout risk of a determination of guilty, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." *Id.* at 391–92, 95 S.Ct. at 1064.

28 F.3d at 1465. *Torres* does not stand for the proposition that jeopardy does not attach to a civil forfeiture when there is no trial; it stands for the proposition that jeopardy does not attach to a civil forfeiture when the party claiming double jeopardy was not a party to the forfeiture proceeding, and thus was never at risk of having a forfeiture judgment entered against him. *See United States v. Shorb,* 876 F.Supp. 1183, 1187 n. 4 (D.Or. 1995) ("As the law now stands, a criminal defendant who asserts a property claim in a forfeiture proceeding plainly does so under a threat of jeopardy."). *See also United States v. Walsh,* 873 F.Supp. 334, 336–7 (D.Ariz. 1994) (citing *Torres* for proposition that jeopardy did not attach to forfeiture proceeding where defendant did not make any claim in civil forfeiture proceeding); *United States v. Branum,* 872 F.Supp. 801, 803 (D.Or.1994) (same); *United States v. Kemmish,* 869 F.Supp. 803, 805–06 (S.D.Cal.1994) (same).

In the instant case, Ursery, unlike Torres, Walsh, Branum, or Kemmish, did make a claim in the forfeiture proceeding, and actively pursued that claim. Not only was Ursery at risk of a forfeiture judgment, he actually suffered forfeiture. Consequently, jeopardy attached when the forfeiture judgment was entered against Ursery.

### D. Double Jeopardy Analysis

#### 1. Punishment

■ In *Halper,* the Supreme Court considered whether and under what circumstances a civil penalty may constitute "punishment" for the purposes of double jeopardy analysis. 490 U.S. at 436, 109 S.Ct. at 1895. In *Halper,* the defendant was first criminally prosecuted for 65 counts of making false medical reimbursement claims totalling approximately $585. He was convicted and sentenced to two years imprisonment and fined $5,000. Subsequently, the government brought a civil action which potentially subjected Halper to a civil penalty of $130,000 for the false claims. The Supreme Court determined that a particular civil penalty could be "so extreme and so divorced from the Government's damages and expenses as to constitute punishment" in spite of its civil label. 490 U.S. at 442, 109 S.Ct. at 1898. The Court stated the following:

The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law, and for the purposes of assessing whether a given sanction constitutes multiple punishment barred by the Double Jeopardy Clause, we must follow the notion where it leads. To that end, the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.

These goals are familiar. We have recognized in other contexts that punishment serves the twin aims of retribution and deterrence.... From these premises, it follows that *a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.* We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.

490 U.S. at 447–49, 109 S.Ct. at 1901–02 (citations omitted) (emphasis added). This case provides the foundation for the instant determination.

In 1993 the Supreme Court decided *Austin v. United States,* — U.S. —, 113 S.Ct. 2801, 125 L.Ed.2d 488, in which it held that the Excessive Fines Clause of the Eighth Amendment applies to civil forfeitures of property under 21 U.S.C. §§ 881(a)(4) and (a)(7). The Court found that civil forfeitures under §§ 881(a)(4) and (a)(7) were punishment because, under the rationale in *Halper,* these penalties did not serve solely a remedial purpose. — U.S. at —, 113 S.Ct. at 2812. Specifically, after careful review, the Court made the following declaration:

In light of the historical understanding of forfeiture as punishment, the clear focus of §§ 881(a)(4) and (a)(7) on the culpability of the owner, and the evidence that Congress understood those provisions as serving to deter and to punish, we cannot conclude that forfeiture under §§ 881(a)(4) and (a)(7) serves solely a remedial purpose. We therefore conclude that forfeiture under these provisions constitutes "payment to a sovereign as punishment for some offense," *Browning–Ferris [Indus. of Vt., Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257] at 265, 109 S.Ct. [2909] at 2915 [106 L.Ed.2d 219 (1989)].....

*Id.* (footnote omitted). Thus, under *Halper* and *Austin,* any civil forfeiture under § 21 U.S.C. § 881(a)(7) constitutes punishment for double jeopardy purposes. *Cf. United States v. $405,089.23 U.S. Currency,* 33 F.3d at 1219–22 (holding that civil forfeiture under § 881(a)(6) constitutes punishment for double jeopardy purposes because *Austin* "resolves the 'punishment' issue with respect to forfeiture cases for purposes of the Double Jeopardy Clause as well as the Excessive Fines Clause").

### 2. Same Offense

■ The Double Jeopardy Clause protects the accused from multiple punishments in multiple proceedings for *the same offense.* Under *United States v. Dixon,* — U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) and *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the test for whether two offenses constitute the "same offense" is whether "each offense contains an element not contained in the other." *Dixon,* — U.S. at ——, 113 S.Ct. at 2856.

■ The government argues that the civil forfeiture and criminal conviction here do not constitute punishment for the same offense because the criminal prosecution requires proof that a *person,* the defendant, committed the crime, while the forfeiture requires proof that the *property* subject to forfeiture has been involved in the commission of a criminal violation. Thus each offense requires an element that the other does not. We disagree with this analysis.

■ We find that the forfeiture and conviction are punishment for the same offense

because the forfeiture necessarily requires proof of the criminal offense. The forfeiture applies to "[a]ll real property ... which is used ... to commit or to facilitate ... a violation of this subchapter." 21 U.S.C. § 881(a)(7). Even though the standard of proof is more easily met in the civil action, the fact remains that the government cannot confiscate Ursery's residence without a showing that he was manufacturing marijuana. The criminal offense is in essence subsumed by the forfeiture statute and thus does not require an element of proof that is not required by the forfeiture action. *See Oakes v. United States,* 872 F.Supp. 817, 824 (E.D.Wash.1994) (reaching this very conclusion)[4]; *see also United States v. Tilley,* 18 F.3d 295, 297–98 (5th Cir.) ("[I]f the prior civil forfeiture proceeding, which was predicated on the same drug trafficking offenses as charged in the indictment, constituted a 'punishment,' the Double Jeopardy Clause will bar the pending criminal trial."), *cert. denied,* — U.S. —, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994); *United States v. One 1978 Piper Cherokee Aircraft,* 37 F.3d 489, 495 (9th Cir.1994) ("[U]nless the civil forfeiture under § 881(a)(4) can be predicated upon some offense other than those for which McCullogh has already been tried, the civil forfeiture is barred by the Double Jeopardy Clause.").[5]

### 3. Separate Proceedings

■ The Supreme Court has made clear that the government may "seek[ ] and obtain[ ] both the full civil penalty and the full range of statutorily authorized criminal penalties *in the same proceeding.*" *Halper,* 490 U.S. at 450, 109 S.Ct. at 1903 (emphasis added). There is disagreement among the circuits, however, as to when a civil forfeiture action and criminal prosecution can properly be considered components of a single proceeding so that double jeopardy is not triggered. We find that the facts in this case simply do not support a determination that the civil forfeiture and criminal prosecution constituted such a single proceeding.

In *United States v. Millan,* 2 F.3d 17, 20 (2d Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 922, 127 L.Ed.2d 215 (1994), the Second Circuit concluded that a civil forfeiture suit and criminal prosecution constituted a single proceeding that did not implicate double jeopardy concerns. In reaching this conclusion the court stated the following:

In the instant case warrants for the civil seizures and criminal arrests were issued on the same day, by the same judge, based on the same affidavit by the DEA agent. In addition, the Stipulation agreed to by the parties involved not only the seized properties of the civil suit, but also properties named in the criminal indictment that were under restraining order. Furthermore, the civil complaint incorporated the criminal indictment. Finally, the [Defendants] were aware of the criminal charges against them when they entered into the

---

4. The court declared the following:
   Any forfeiture under section 881(a)(7), therefore, requires a preceding violation of the controlled substance statutes. Thus, the Government could not have attempted to take Mr. Oakes's home had Mr. Oakes not manufactured marijuana on the premises. To accept the Government's argument that the sections involve different elements simply because one section of the statute deals with property and the other people, would be to adopt a circular and illusory theory.
   872 F.Supp. at 824.

5. The fact that the government did not have to prove that Ursery manufactured marijuana to obtain the consent judgment in the instant case does not alter the nature of the same offense test. As with a plea of *nolo contendere,* the double jeopardy bar is triggered not by the evidence proved, but by the elements charged. *Cf. Brown v. Foltz,* 583 F.Supp. 1063, 1069 (E.D.Mich.)

(holding that plaintiff was placed in double jeopardy when he pled *nolo contendere* to simple larceny and was subsequently convicted of armed robbery since under Michigan law larceny was a lesser-included offense of armed robbery and the convictions arose out of same transaction), *aff'd,* 754 F.2d 372 (6th Cir.1984); *United States v. Marcus Schloss & Co.,* 724 F.Supp. 1123, 1126 (S.D.N.Y.1989) (stating that *nolo contendere* plea furnishes sufficient basis for double jeopardy claim); *Chikitus v. Shands,* 373 So.2d 904, 905 (Fla.1979) (holding that plaintiff's double jeopardy claim based on his prior *nolo contendere* plea was not barred because relevant consideration is not nature of evidence adduced at prior trial, but elements of previous crime charged); *State v. Gobern,* 423 A.2d 1177, 1179 (R.I.1981) (holding that once *nolo contendere* plea is accepted by court, jeopardy attaches).

Stipulation. Given these circumstances, we reach the conclusion that the civil and criminal actions were but different prongs of a single prosecution of the [Defendants] by the government.

2 F.3d at 20. Comparing this statement to the facts of the instant case, the *only* similarity is that Ursery was aware of the criminal charges against him at the time he settled the civil forfeiture suit. This similarity is insufficient to warrant application of *Millan*'s holding to the instant case.

In contrast, the Ninth Circuit has rejected the *Millan* view:

> We fail to see how two separate actions, one civil and one criminal, instituted at different times, tried at different times before different factfinders, presided over by different district judges, and resolved by separate judgments, constitute the same "proceeding."

*$405,089.23 U.S. Currency,* 33 F.3d at 1216. The court found that the parallel proceedings in that case were separate proceedings for double jeopardy purposes. *Id.* at 1218.

The government argues that the fact that the civil forfeiture action and criminal action were commenced roughly four months apart should not deter application of *Millan,* and points to the Eleventh Circuit's recent decision, *United States v. One Single Family Residence,* 13 F.3d 1493, 1499 (11th Cir. 1994), in which the court found a single proceeding even though the civil forfeiture action and criminal action began and ended on different dates. The government points to the Eleventh Circuit's explanation that, "[a]s in *Millan,* there is no problem here that the government acted abusively by seeking a second punishment because of dissatisfaction with the punishment levied in the first action." 13 F.3d at 1499. We do not find this rationale to be dispositive of the issue.

The Ninth Circuit's rationale in *$405,-089.23 U.S. Currency* suggests that parallel civil forfeiture and criminal proceedings will always violate the Double Jeopardy Clause. *See* 33 F.3d at 1216 ("A forfeiture case and a criminal prosecution would constitute the *same* proceeding only if they were brought in the same indictment and tried at the same time.") (emphasis in original). The Ninth Circuit completely rejects the Second and Eleventh Circuit's efforts to consider the parallel proceedings as one prosecution. *See id.* at 1217 ("We are not willing to whitewash the double jeopardy violation in this case by affording constitutional significance to the label of 'single, coordinated prosecution.'"). While we acknowledge the Ninth Circuit's approach, we also find it unnecessary to fully adopt the Ninth Circuit's view in this case. It is merely our view that in so far as the existence of a "single, coordinated proceeding" could arguably satisfy the requirements of the Double Jeopardy Clause, as suggested by the Second and Eleventh Circuits, the facts in this case fail to reveal such a single, coordinated proceeding. In the instant case, the record reveals no indication that the government intended to pursue the civil forfeiture action and the criminal prosecution as a coordinated proceeding. Moreover, as government counsel made clear at oral argument, there has been no communication between the government attorneys who handled Ursery's criminal prosecution and those who handled the civil forfeiture action. The civil forfeiture proceeding and the criminal proceeding were instituted four months apart, presided over by different district judges, and resolved by separate judgments. The district court found these two proceedings to be part of a "single, coordinated proceeding" without providing any factual support for this determination. As a matter of principle, applying a label to something does not make it so. Without a reasonable analysis of the indicia of coordination, we do not believe these two proceedings logically become part of a single, coordinated procedure merely by labeling them as such. Similar to the Ninth Circuit, we find that applying the label of "single, coordinated prosecution" to the facts of this case simply goes too far. The civil forfeiture proceeding and the criminal prosecution were two separate proceedings for purposes of double jeopardy analysis.[6]

---

**6.** Nor does the Supreme Court's recent holding in *Department of Revenue v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994) alter this conclusion. In *Kurth Ranch,*

### III. Conclusion

For the reasons stated above, we find that the civil forfeiture judgment against Ursery followed by his criminal conviction constituted double jeopardy. Consequently, we reverse the judgment of the district court, and we remand the case to that court with instructions to reverse Ursery's conviction and vacate his sentence.

MILBURN, Circuit Judge, dissenting.

The majority holds that the civil forfeiture judgment followed by a criminal prosecution in this case violates the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States. I respectfully dissent.

Defendant argues that the imposition of criminal punishment against him, in addition to the civil forfeiture proceedings instituted against his home, is prohibited by the Double Jeopardy Clause. However, in its memorandum and order issued on September 14, 1993, the district court denied defendant's motion to dismiss on double jeopardy grounds, finding that the civil forfeiture proceeding and the criminal conviction were " 'part of a single, coordinated prosecution of [a] person involved in alleged criminal activity,' " J.A. 29–30, and that such an effort did not violate the Double Jeopardy Clause. For the rea-

sons that follow, I would affirm this holding of the district court.

#### I.

In *United States v. Halper,* the Supreme Court held that a civil sanction, when applied against an individual also subject to criminal conviction, may constitute "punishment" that requires a double jeopardy analysis. *United States v. Halper,* 490 U.S. 435, 448, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989). However, the Court indicated that its decision was not intended to "prevent the Government from seeking and obtaining both the full civil penalty and the full range of statutorily authorized criminal penalties in the same proceeding." *Halper,* 490 U.S. at 450–51, 109 S.Ct. at 1903. Thus, the Double Jeopardy Clause offers protection when the government has already imposed a penalty, either civil or criminal, and seeks to impose further punishment out of dissatisfaction with the earlier result, *id.* at 451 n. 10, 109 S.Ct. at 1903 n. 10, but not in the instance of a single proceeding seeking the full range of available sanctions. *See also United States v. Hudson,* 14 F.3d 536, 540 (10th Cir.1994) (citing *United States v. Bizzell,* 921 F.2d 263, 267 (10th Cir.1990)) (finding that the order of penalties is not material to the double jeopardy question). The Court recently reaffirmed this principle in *Department of Revenue of Montana v. Kurth Ranch,* —— U.S. ——,

---

the Court examined "whether a tax on the possession of illegal drugs assessed after the State has imposed a criminal penalty for the same conduct may violate the constitutional prohibition against successive punishments for the same offense." —— U.S. at ——, 114 S.Ct. at 1941. In beginning its analysis, the Court explained that

"[the State] no doubt could collect its tax on the possession of marijuana, for example, if it had not previously punished the taxpayer for the same offense, *or indeed, if it had assessed the tax in the same proceeding that had resulted in his conviction.* Here, we ask only whether the tax had punitive characteristics that subject it to the constraints of the Double Jeopardy Clause."

*Id.* at ——, 114 S.Ct. at 1945 (citations omitted) (emphasis added). In *Kurth Ranch,* the Court found that the tax proceeding, initiated after the taxpayer's arrest for conduct giving rise to the tax obligation, constituted a successive proceeding to the taxpayer's criminal proceeding. *Id.* at

—— n. 21, 114 S.Ct. at 1947 n. 21. The Court did not consider whether the contemporaneous criminal prosecution and tax proceeding could be viewed as a "single, coordinated proceeding" for purposes of double jeopardy analysis. *See Torres,* 28 F.3d at 1465 (noting the same in dicta). Instead, the Court found that the State's assessment of the tax in a proceeding separate from the taxpayer's criminal prosecution necessarily constituted separate proceedings for the purpose of double jeopardy analysis. This holding, to the extent that it is applicable to the instant case, is in accord with our view that the civil forfeiture proceeding and the criminal prosecution in the instant case were two separate proceedings for purposes of double jeopardy analysis.

Finally, we note that, contrary to the dissent's suggestion, the fact that the Court did not address the civil forfeiture proceeding which also existed in *Kurth Ranch* simply has no precedential value in this case.

——, 114 S.Ct. 1937, 1945, 128 L.Ed.2d 767 (1994).[1]

Unlike the majority, I believe that this case involves a sufficiently coordinated proceeding to fall under the holdings in *United States v. Millan*, 2 F.3d 17 (2d Cir.1993), cert. denied, —— U.S. ——, 114 S.Ct. 922, 127 L.Ed.2d 215 (1994), and *United States v. One Single Family Residence Located at 18755 North Bay Road, Miami*, 13 F.3d 1493 (11th Cir.1994). In *Millan*, the Second Circuit found that the civil forfeiture action against defendant's bank accounts and certain properties and his conviction on narcotics charges were not subject to double jeopardy analysis because the government's actions were part of a "single, coordinated prosecution of persons involved in alleged criminal activity." *Millan*, 2 F.3d at 20. It is true, as the majority points out, that *Millan* involved a much clearer case of coordinated proceedings. However, the Second Circuit's concern in that case, and its focus, was whether the timing of the civil and criminal actions allowed the government to punish the defendant with a second action if it believed that the defendant had not received a sanction that was adequately severe in the first case. The Second Circuit stated that its decision did not run afoul of the Supreme Court's concern in *Halper* that the government might abuse its resources by seeking to punish defendants a second time because the civil and criminal actions at issue were contemporaneous, and it was clear to all the parties that the government was pursuing the full range of its remedies regardless of the outcome in either the civil or criminal proceedings. *Millan*, 2 F.3d at 20–21. This was also the logic of the Eleventh Circuit in *One Single Family Residence*, in which the court found that "the circumstances of the

simultaneous pursuit by the government of criminal and civil sanctions against [the defendant] ... falls within the contours of a single, coordinated prosecution." *One Single Family Residence*, 13 F.3d at 1499.[2] It is this logic that underlies my conclusion that there was no double jeopardy violation in this case.

I believe that the timing of the civil and criminal proceedings and the potential for government abuse of those proceedings are the central factors in assessing the double jeopardy concerns in this case. Such an approach avoids the inevitable difficulty of a case-by-case comparison of the level of coordination, the majority's method for making this determination. Merely looking at whether the proceedings at issue bear sufficient similarity to the proceedings in *Millan* presents the difficult problem of determining how much similarity is required to permit a finding of a single, coordinated proceeding. For example, in this case, the proceedings against defendant and his property took place in close time proximity to one another. The government commenced civil forfeiture proceedings against the home owned by defendant and his wife on September 30, 1992, and a grand jury returned an indictment against defendant on February 5, 1993. Pursuant to a stipulated settlement agreement, the district court entered a consent judgment in the civil forfeiture proceeding on May 24, 1993. Defendant was convicted on the criminal charge on July 2, 1993. It was clear to defendant at the time he entered into the stipulated settlement agreement that the government was pursuing its full range of remedies against him. Is this enough factual similarity to apply *Millan* and *One Single Family Residence?* The majority concludes

1. In *Kurth Ranch*, the Court noted that "Montana no doubt could collect its tax on the possession of marijuana, for example, if it had not previously punished the taxpayer for the same offense, or, indeed, if it had assessed the tax in the same proceeding that resulted in his conviction." *Kurth Ranch*, —— U.S. at ——, 114 S.Ct. at 1945 (citing *Missouri v. Hunter*, 459 U.S. 359, 368–69, 103 S.Ct. 673, 679–80, 74 L.Ed.2d 535 (1983)).

2. In *One Single Family Residence*, a civil forfeiture action was instituted against the home of the defendant in October 1990; five months later, in

late March 1991, an indictment was returned against the defendant. The government pursued both remedies, obtaining a conviction on October 30, 1991, and a subsequent order of forfeiture. The Eleventh Circuit noted, as the Second Circuit had in *Millan*, that the case involved no potential for the government to seek a second punishment out of dissatisfaction with the outcome in the first action because the commencement of a civil action before the imposition of a criminal penalty precluded such a result. *One Single Family Residence*, 13 F.3d at 1499 (citing *Millan*, 2 F.3d at 20).

that it is not, but another panel could easily reach a contrary conclusion. Given the inherent problems in following such an unpredictable approach, I feel it is necessary to determine the case on a more objective and reliable basis. I conclude that this case involves a single, coordinated proceeding because it does not present the potential for government abuse of process; the government instituted and pursued both proceedings against defendant before it knew the outcome of either case.

It is true, as the majority points out, that the civil and criminal proceedings against defendant were handled by separate counsel from the United States Attorney's office and that the government attorneys did not appear to be actively collaborating. However, in *Millan,* the Second Circuit observed that the fact of separate proceedings is not dispositive in determining whether the government is employing a single proceeding to prosecute a defendant. "Civil and criminal suits, by virtue of our federal system of procedure, must be filed and docketed separately. Therefore, courts must look past the procedural requirements and examine the essence of the actions at hand by determining when, how, and why the civil and criminal actions were initiated." *Millan,* 2 F.3d at 20. In this case, the civil and criminal proceedings against defendant and his property were active during the same time frame, and defendant knew at the time of the settlement in the civil forfeiture action that a criminal action was pending. Moreover, both actions resulted from a search of defendant's property and the surrounding areas, a search that revealed extensive marijuana production and possession.

In *United States v. Torres,* 28 F.3d 1463, 1464–65 (7th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994), the Seventh Circuit questioned the continued applicability of *Millan* and *One Single Family Residence* after the Supreme Court's recent decision in *Kurth Ranch.* However, I do not believe that *Kurth Ranch* necessarily changes this result. *Kurth Ranch* does not hold that every civil action the government pursues against a defendant subject to other penalties constitutes a separate proceeding.

In fact, *Kurth Ranch* itself included a criminal penalty, a civil forfeiture action, a bankruptcy action, and a tax assessment. *Kurth Ranch,* — U.S. at —— – ——, 114 S.Ct. at 1941–44. There was apparently no challenge to the simultaneous pursuit of a criminal action and a civil forfeiture proceeding, the case we are dealing with here. Moreover, the Court, by its own language, distinguished *Kurth Ranch,* noting that the tax statute at issue did not raise "the question whether an ostensibly civil proceeding that is designed to inflict punishment may bar a subsequent proceeding that is admittedly criminal in character." *Kurth Ranch,* — U.S. at — n. 21, 114 S.Ct. at 1947 n. 21.

The Court's primary focus in *Kurth Ranch* was on the issue of whether Montana's drug tax constituted a penalty for double jeopardy purposes. The Court never questioned the civil forfeiture action but dealt specifically and exclusively with the tax assessment. The language of the decision suggests that the Court viewed the case as different from other civil actions because it was based on a tax issue. The Court said: "[T]he tax assessment not only hinges on the commission of a crime, it also is exacted only after the taxpayer has been arrested for the precise conduct that gives rise to the tax obligation in the first place." *Kurth Ranch,* — U.S. at ——, 114 S.Ct. at 1947. Thus, in *Torres,* the Seventh Circuit interpreted *Kurth Ranch* as dealing with the collection of a monetary penalty for a crime. *Torres,* 28 F.3d at 1464–65. The Montana tax could be imposed only after a criminal conviction was obtained. There was no question that the same conduct was involved. That is not the case here. Defendant did not have to be convicted of the drug offense before a civil forfeiture could be pursued. In fact, the civil proceedings were begun first. Therefore, I conclude that neither the civil forfeiture nor the criminal conviction was imposed as punishment consequent upon defendant's criminal conviction or admission of guilt.

Because I conclude that the government was not acting to pursue a second punishment out of dissatisfaction with the first outcome, the only remaining concern is whether the "total punishment exceed[s] that autho-

rized by the legislature." *Halper*, 490 U.S. at 450, 109 S.Ct. at 1903. Defendant was convicted of violating 21 U.S.C. § 841(a)(1). Under 21 U.S.C. § 841(b)(1)(B)(vii), defendant was subject to a term of imprisonment of not less than five years, nor more than 40 years; a fine not to exceed $2,000,000; and a term of supervised release of at least four years. Defendant was sentenced to 63 months imprisonment and four years of supervised release. No fine was imposed. Thus, defendant's sentence was clearly within the range of authorized punishment.

In addition, pursuant to 21 U.S.C. § 881(a)(7), any real property that is used or intended to be used to facilitate the commission of a violation of 21 U.S.C. § 801 *et seq.* that is punishable by more than one year in prison is subject to forfeiture unless the owner qualifies as an "innocent owner." Marijuana stems and seeds were found in defendant's home during the search of his property; furthermore, the police received notice that defendant had been seen with marijuana at his home and had shared marijuana with family members and acquaintances. Defendant's home was, therefore, properly subject to civil forfeiture under 21 U.S.C. § 881(a)(7), a civil penalty well within the bounds set forth by Congress.

## II.

I also note my disagreement with the majority's conclusion that the civil forfeiture action and defendant's criminal prosecution are based on the same offense. The majority concludes that the civil forfeiture and the criminal conviction are punishment for the same offense because the forfeiture necessarily requires proof that defendant was manufacturing marijuana, and the criminal offense is effectively subsumed by the forfeiture. Again, I disagree.

In the criminal prosecution in this case, defendant was convicted of one count of manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1). For defendant to be found guilty under this statute, the prosecution had to show (1) that defendant manufactured marijuana and (2) that he did so intentionally or knowingly. *See United States v. Litteral,* 910 F.2d 547, 550 (9th Cir.1990) (requiring the same elements to prove a charge of manufacturing methamphetamine). However, defendant was charged with the manufacture of marijuana only during the year 1992.

By contrast, the civil forfeiture complaint charged that defendant's property was used or intended to be used to facilitate the unlawful processing and distribution of a controlled substance for several years. J.A. 19. In order to prevail in the civil forfeiture action, the government would have to have produced proof of probable cause to believe (1) that the property was used or intended to be used to facilitate the manufacture and distribution of marijuana and (2) that this offense was punishable under Title 21 of the United States Code by imprisonment of more than one year. 21 U.S.C. § 881(a)(7); *United States v. Real Property Known and Numbered as Rural Route 1, Box 137–B, Cutler, Ohio,* 24 F.3d 845, 848 (6th Cir.1994). The majority claims that the government could not confiscate defendant's residence without a showing that he was manufacturing marijuana. This view, however, overlooks the fact that the civil forfeiture action required a showing that defendant's property was involved in the commission or facilitation of both processing and distribution of a controlled substance over the course of several years. As earlier stated, the criminal indictment charged defendant only with the manufacture of a controlled substance during 1992. Had the civil forfeiture action been adjudicated, the government might have established its case with evidence relating solely to processing and distribution activities in years other than 1992. Under those circumstances, the criminal prosecution and the civil forfeiture action would undoubtedly relate to separate offenses under the Double Jeopardy Clause. *United States v. Miller,* 870 F.2d 1067, 1069–72 (6th Cir.1989).

## III.

For the reasons stated, I would hold that the civil forfeiture action against defendant's property followed by defendant's criminal prosecution did not create a double jeopardy

violation, and I would affirm the judgment of the district court.