**The STATE of Ohio**

v.

**SMITH.** █

Court of Common Pleas of Ohio,
Clermont County.

No. 95–CR–005332.

Decided May 13, 1996.

*Michael T. Pettry,* Clermont County Assistant Prosecuting Attorney, for plaintiff.

*Jeffrey S. Schwartz,* for defendant.

ROBERT P. RINGLAND, Judge.

This matter came before the court on defendant Michael Eugene Smith's motion to dismiss based upon double jeopardy. Both the proponent of the motion and the state submitted the matter pursuant to memoranda and stipulated fact. The facts indicate that defendant was indicted for knowingly selling a total of twenty pounds of marijuana to one confidential informant Allen in four separate shipments of contraband from Texas to Clermont County, Ohio, occurring on or about June 19, July 5, July 26, and August 15, 1995, respectively. In setting up the sales, numerous telephone calls were made from Clermont County to Houston, Texas, and recorded by Clermont County law enforcement with the consent of Allen. On August 31, 1995, Clermont County law enforcement met with defendant in Texas pursuant to a previous telephone call arranging a buy. At the time, the officers arrested defendant and executed a search warrant on defendant's home and automobile. After the arrest, defendant provided law enforcement with written statements regarding the source of the money found on his person in the amount of $20,000. The $20,000 confiscated by the law enforcement included money sent to Smith by confidential informant Allen during June, July, and August 1995.

On November 21, 1995, the $20,000 in currency confiscated by officers was forfeited to the state of Texas in case No. 9544969, captioned *State of Texas v. $20,000.*

The state of Ohio has pursued the prosecution pursuant to indictment under R.C. 2925.03(A)(7) after civil forfeiture of the $20,000 in United States currency was obtained by Texas. The defendant argues that the forfeiture of the cash in Texas is in essence a criminal punishment and prosecution and that he can therefore not stand trial for the same offense occurring out of the same set of facts and circumstances in the state of Ohio, citing *United States v. Halper* (1989), 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487, and *United States v. $405,089.23 U.S. Currency* (C.A.9, 1994), 33 F.3d 1210. Further, defendant relies on *United States v. Ursery* (C.A.6, 1995), 59 F.3d 568, where the Court of Appeals for the Sixth Circuit indicated that civil forfeiture proceedings in criminal cases which are instituted at different times, tried by different fact finders, and resolved by separate judges are in essence two separate proceedings for purpose of double-jeopardy analysis.

It is clear that the government may impose both a criminal and a civil sanction with respect to the same act or omission. *Helvering v. Mitchell* (1938), 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917. A penalty assessed in a civil proceeding does not *per se* implicate the Double Jeopardy Clause. See *United States ex rel.*

*Marcus v. Hess* (1943), 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443. However, the civil penalty must have some nexus to actual damages and expenses incurred by the government; if the civil sanction in its application is so removed from any remedial goal that it constitutes punishment, then double jeopardy may apply. See *United States v. Halper* (1989), 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487. The forfeiture exercise under Chapter 59 of the Texas Code of Criminal Procedure is intended to be remedial in nature and not a form of punishment. See Tex.Code Crim.P.Ann. 59.05 (West 1996). Certainly, however, saying that it is so does not necessarily make it so and per *Halper, supra,* the court must examine the substance over the form for analysis.

In construing a federal forfeiture statute, the Supreme Court looked at a number of factors to determine the punitive nature of the statute. *Austin v. United States* (1993), 509 U.S. 602, 617–619, 113 S.Ct. 2801, 2810, 125 L.Ed.2d 488, 502–504. First, the statute in *Austin* exempted the innocent owner of the property from the forfeiture provisions. The Supreme Court noted that this provision focuses on the culpability of the owner in a way that makes it look more like punishment. The Texas Code makes a similar exemption to the innocent owner. See, *e.g.,* Tex.Code Crim.P.Ann. 59.02(C)(2) (West 1996). Thus, this provision shields the innocent bystander from the wrath of the state in a manner consistent with a criminal proceeding. Second, in *Austin,* the federal statute tied the forfeiture directly to the commission of the drug offense. *Id.,* 509 U.S. at 619–621, 113 S.Ct. at 2811, 125 L.Ed.2d at 503–505. The United States Senate Report outlined that bringing real estate within the purview of the forfeiture provisions would serve as a "powerful deterrent." Notably, the Texas statute includes real estate in its provisions as well. Tex.Code Crim.P.Ann. 59.04(g) (West 1996). Although the legislative history of the Texas General Assembly is not available to research its motivation to include real estate within the Texas statute, it is a foregone conclusion that similar reasoning was at work. Thus, the application of the Texas statute works as a punishment through forfeiture; its aim is to deter and provide for retribution to the state.

A contrary view would embrace Texas's view towards forfeitures as being civil penalties *per se.* The court has recognized that the forfeiture of contraband itself may be characterized as remedial because it removes dangerous or illegal items from society. *United States v. One Assortment of 89 Firearms* (1984), 465· U.S. 354, 364, 104 S.Ct. 1099, 1105–1106, 79 L.Ed.2d 361, 369–370. Yet, the court has squarely rejected the extension of this reasoning to property which is not *ipso facto* criminal. *One 1958 Plymouth Sedan v. Pennsylvania* (1965), 380 U.S. 693, 699, 85 S.Ct. 1246, 1250, 14 L.Ed.2d 170, 174. Although no case has directly dealt with express statutory language forcing a *per se* application of remedial-penalty

doctrine, it is unlikely that any state can modify substantive fundamental rights as a matter of legislative fiat. Despite Texas's self-serving language that its forfeiture provisions are remedial in nature, the substance of the provisions reveal a different story. The court in *Austin* remarked, "the value of the conveyance and real property forfeitable [under the statute] can vary so dramatically that any relationship between the Government's actual costs and the amount of the sanction is merely coincidental." *Austin v. United States,* 509 U.S. at 622, 113 S.Ct. at 2812, 125 L.Ed.2d at 505, fn. 14. As mentioned before, the nexus between the forfeiture and the government's costs is not required to be a close fit, but there must exist some logical relationship.

In the present case, the Texas court did not engage in an accounting of governmental expenses. In fact, the statute indicates that any amount, no matter how large, is subject to forfeiture. It is this open-ended approach with which the United States Supreme Court is concerned and which will result in the forfeiture being characterized as criminal rather than civil.

The cases which have dealt with the issue of double jeopardy resulting from civil forfeiture usually arise after the criminal proceeding has become final. In the present case, the order of presenting proceedings has been reversed. In the context of double jeopardy doctrine, however, this obscure distinction has no material impact. The underlying policy of the Texas forfeiture statute is both to deter drug transactions and provide for restitution: the subsequent forfeitures are criminal in nature and not remedial despite any explicit legislative language to the contrary. Having determined that Texas's civil proceeding was instituted to punish the defendant for his transgression, this court must now determine whether the Ohio criminal prosecution in seeking punishment for the Texas offense places defendant in fact twice in jeopardy.

The court notes that in *Brown v. Ohio,* successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first. See *Brown v. Ohio* (1977), 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187. Where the same acts constitute a violation of two distinct statutory provisions, the test is to be applied to determine whether there are two offenses or only one. *Blockburger v. United States* (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. The court finds that the event on August 31, 1995 and the offenses outlined in the indictment are for purposes of the Double Jeopardy Clause one and the same.

Having arrived at this point, however, that both Texas and Ohio have chosen to prosecute, nevertheless, the United States Supreme Court in *Heath v. Alabama*

(1985), 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387, permitted successive prosecutions by two states for the same conduct. The factual backdrop of *Heath* is similar to that in the case *sub judice*. In that case, Heath hired Owens to kill his wife. Owens proceeded to kidnap Mrs. Heath, and her body was discovered in Georgia where the murder took place. Both states indicted Heath for murder, and he was convicted of murder or the lesser included offense in each state.

The *Heath* court pointed out that where the defendant in a single act violates the "peace and dignity of two sovereigns" by breaking the law of each, he has committed two distinct offenses. There is no doubt that the states are no less sovereign with respect to each other than they are with respect to the federal government. Therefore, although the defendant may have committed one act, for the purpose of dual-sovereignty doctrine this drug transaction shall be multiple acts subject to vindication by each proper sovereignty. The very interstate nature of drug trafficking has the potential of exposing the participants to criminal liability in each local along their path of distribution. Both Texas and Ohio have significant interests in vindicating their laws.

In sum, for purposes of the Double Jeopardy Clause, the Texas offense and the Ohio indictment are the same act; yet, for purposes of dual-sovereignty doctrine they are two separate offenses. Therefore, the Double Jeopardy Clause does not bar the present prosecution. The motion to dismiss as a bar under double jeopardy is hereby denied. Exceptions reserved to the defendant. State to prepare entry accordingly.

*Motion to dismiss denied.*