**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 8/19/96**

**TENTH CIRCUIT**

United States of America,

      Plaintiff-Appellee,

v.

      No. 95-1193

Johnny Joe Lopez,

      Defendant-Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 94-CR-193)**

Submitted on the briefs:[*]

Michael G. Katz, Federal Public Defender, and Susan L. Foreman, Assistant Federal Public Defender, Denver, Colorado for Defendant-Appellant.

Henry L. Solano, United States Attorney, and John M. Hutchins, Assistant United States Attorney, Denver, Colorado for Plaintiff-Appellee.

---

[*] In her brief counsel for Lopez requested oral argument. The government in its answer brief waived oral argument. The case was later set for oral argument on May 15, 1996. On April 16, 1996, counsel for Lopez filed a motion to submit the case on the briefs. This motion was granted on April 24, 1996, and on May 16, 1996, the case was submitted to this panel without oral argument. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.

Before **TACHA,** Circuit Judge, **BALDOCK**, Circuit Judge, and **McWILLIAMS,** Senior Circuit Judge.

---

**McWILLIAMS,** Senior Circuit Judge.

---

This case involves the jeopardy clause of the Fifth Amendment to the United States Constitution.

On September 29, 1992, a federal parole violation arrest warrant was issued for Johnny Joe Lopez, the appellant. It was executed on January 13, 1993, at Lopez' apartment in Westminster, Colorado. An ensuing search of his apartment revealed eight kilograms of cocaine, twenty kilograms of marijuana, approximately $100,000 in United States currency, and a warranty deed conveying title to a residence located at 10736 Livingston Drive, Northglenn, Colorado, to Lopez.

The United States then filed a civil *in rem* forfeiture action pursuant to 21 U.S.C. § 881 and 18 U.S.C. § 981. The complaint sought forfeiture of the currency found in Lopez' apartment, his interest in the property located at 10736 Livingston Drive in Northglenn, his automobile, and some additional items of personal property. The government alleged that the items sought to be forfeited were used in, or were proceeds of, Lopez' drug activities. A settlement was reached in this proceeding whereby Lopez agreed to forfeit the currency found in his apartment, a car, jewelry, the residence on

- 2 -

Livingston Drive, and various items of personal property. A final order and judgment of forfeiture was entered on September 23, 1993.

On September 22, 1994, the United States filed a two-count indictment against Lopez, charging him with the unlawful possession of cocaine and marijuana with an intent to distribute each, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The indictment was based on the eight kilograms of cocaine and the twenty kilograms of marijuana found in Lopez' apartment on January 13, 1993.

The parties thereafter entered into a plea bargain whereby Lopez agreed to plead guilty to a one-count information charging him with interstate travel in aid of a racketeering enterprise in violation of 18 U.S.C. § 1952(a)(1) and 18 U.S.C. § 2. Lopez further agreed to provide testimony before the grand jury regarding the source of the drugs. The government, in turn, agreed to dismiss the original indictment.[1] On November 29, 1994, Lopez pleaded guilty to the one-count information.

On January 27, 1995, Lopez filed a motion to dismiss the indictment, which had not yet been dismissed, alleging that the double jeopardy clause of the Fifth Amendment barred his criminal prosecution, because that prosecution was based upon the same "offense or conduct" as that relied upon in the prior civil forfeiture proceeding. At oral argument on the motion to dismiss, counsel indicated that if the court denied the motion

---

[1] The plea bargain contained a stipulation that during January, 1993, Lopez traveled from Colorado to Texas to make payment for the delivery of eight kilograms of cocaine to Colorado.

to dismiss, Lopez would still stand on his guilty plea to the one-count information, since Lopez basically sought only to avoid any imprisonment.

On March 23, 1995, the district court denied Lopez' motion to dismiss the indictment. In so doing, the district court stated that Lopez had failed to show that prosecution for interstate travel in aid of a racketeering enterprise in violation of 18 U.S.C. § 1952(a)(1) was the "same offense" as the civil forfeiture proceeding, citing *Blockburger v. United States,* 284 U.S. 299, 304 (1932). Specifically, the district court held that under 18 U.S.C. § 1952(a)(1), the government must show, *inter alia,* that Lopez "traveled ... in interstate or foreign commerce" in aid of a racketeering enterprise, and that such was not an essential element of the civil forfeiture proceeding brought under 21 U.S.C. §§ 881(a)(6) and (a)(7). Conversely, the district court found that in the civil forfeiture proceeding the government must show, *inter alia,* that the property sought to be forfeited was used to facilitate a drug offense or was traceable to drug activities, neither of which was an essential element of 18 U.S.C. § 1952(a)(1). A motion to reconsider was denied.

At sentencing on May 5, 1994, the district court expanded a bit on its prior ruling and stated that neither the two-count indictment charging possession of cocaine and marijuana nor the one-count information charging interstate travel in aid of a racketeering enterprise charged the "same offense"as that charged in the civil forfeiture proceeding. The court then sentenced Lopez to imprisonment for sixty months. On that same day, the

district court, in accord with the plea bargain, dismissed the two-count indictment against Lopez.

The Fifth Amendment to the United States Constitution provides, in pertinent part:

"nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." The foregoing constitutional provision has been held to encompass three separate guarantees: (1) it protects against a second prosection for the same offense after a prior acquittal; (2) it protects against a second prosection for the same offense after a prior conviction; and (3) it protects against multiple punishments for the same offense. *Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 306-7 (1984).

In his motion to dismiss, Lopez sought to dismiss the indictment, and not the information. At the time the motion to dismiss was filed, Lopez had in fact entered a plea of guilty to interstate travel in aid of a racketeering enterprise, and the government had agreed to dismiss the criminal indictment, which it later did. Be that as it may, the district court initially treated the motion to dismiss as challenging the information. As above stated, in denying the motion to dismiss, the district court held that the prior civil forfeiture action involved essential elements not present in the interstate travel offense, and vice versa. At sentencing, the district court, as indicated, elaborated a bit, and held that the prior civil forfeiture proceeding involved essential elements not present in the charges set forth in the indictment, i.e., unlawful possession of cocaine and marijuana, as

well as the information.

Subsequent to the district court's judgment in the instant case, the Supreme Court, on June 24, 1996, announced its decision in *United States v. Ursery, et. al.,* ____ U.S. ____, 116 S. Ct. 2135 (1996). We believe *Ursery* is depositive of the present appeal.

In *Ursery,* the government argued that the civil forfeiture of property was not the "same offense" as the ensuing criminal prosecution and that the double jeopardy protection against multiple punishments for the same offense was not an issue in the case. The Supreme Court declined to address that particular argument because it concluded that the "civil forfeitures involved in these cases do not constitute punishment under the Double Jeopardy Clause ..." *Ursery*, 116 S.Ct. at 2140. In other words, since the civil forfeiture in *Ursery* was not "punishment" for double jeopardy purposes, the Supreme Court did not reach the question of whether the civil forfeiture was the "same offense" as the criminal charge. The Court stated that only if the civil forfeiture in a given case was so potentially punitive as to constitute punishment, would a court need to address the further question of whether the civil forfeiture was the "same offense" as the criminal one. *Id.* at 2142. Because, in the instant case, we ultimately find that under *Ursery* the civil forfeiture was not "punishment", we do not need to address the reason given by the district court for its denial of the motion to dismiss; viz., that the civil forfeiture action was not for the same offense as set forth in either the indictment or the information. So, we will resolve the present appeal on the same ground as that used by the Supreme Court

in *Ursery.*[2]

*Ursery* involved two cases, one from the Sixth Circuit, *United States v. Ursery,* 59 F.3d 568 (6th Cir. 1995), and one from the Ninth Circuit, *United States v. $405,089.23 United States Currency,* 33 F.3d 1210 (9th Cir. 1994). In the Sixth Circuit case, Michigan police found marijuana growing next to Ursery's house, and discovered marijuana seeds, stems, stalks and a "growlight" inside the house. The government then instituted civil forfeiture proceedings against the house, alleging that the house had been used to facilitate the unlawful possession and distribution of marijuana. Ursery ultimately paid the United States $13,250 to settle the forfeiture claim in full. Shortly before the forfeiture proceeding was settled, Ursery was indicted for manufacturing marijuana, in violation of 21 U.S.C. § 841(a)(1). A jury convicted him of the criminal charge and he was sentenced to 63 months in prison. The Sixth Circuit Court of Appeals reversed Ursery's conviction on the criminal charge, holding that his conviction violated the Double Jeopardy Clause of the Fifth Amendment.

In the Ninth Circuit case, Charles Wesley Arlt and James Wren were convicted of various counts of conspiracy and money laundering. Arlt and Wren were both sentenced to life in prison. Before the criminal trial had started, the government filed a civil *in rem* complaint against various items of property seized from, or titled to, Arlt and Wren. The

---

[2] Our approach to this appeal should not be construed as indicating that the district court's reasoning that the civil forfeiture proceeding involved essential elements not present in the charges in the indictment or information, and vice versa, was faulty.

parties agreed to defer litigation of the forfeiture proceeding during the criminal prosecution. More than a year after the conclusion of the criminal prosecution, the district court granted the government's motion for summary judgment in the civil forfeiture proceeding. On appeal, the Ninth Circuit reversed the grant of summary judgment to the government in the forfeiture proceeding, holding that the forfeiture violated the Double Jeopardy Clause of the Fifth Amendment, that such forfeiture constituted punishment, and that Arlt and Wren had already been "punished" by the life sentences imposed in the prior criminal prosecution.

As indicated, the Supreme Court in *Ursery* reversed both the Sixth and Ninth Circuits. In so doing, the Supreme Court used a two-part test to determine whether civil forfeiture constituted "punishment" for Double Jeopardy purposes. *Ursery,* 116 S.Ct. at 2147. The Court first asked whether Congress intended proceedings under the forfeiture provisions to be criminal or civil. In the second prong, the Court inquired whether the forfeiture proceedings were "so punitive in fact as to 'persuade us that the forfeiture proceeding[s] may not legitimately be viewed as civil in nature,' despite Congress' intent." *Id.*

Applying that test to the facts of *Ursery,* the Court then went on to state that "[t]here is little doubt that Congress intended these forfeitures to be civil proceedings". *Id.* As concerns the second part of the two-pronged test, the Supreme Court stated "there is little evidence, much less the 'clearest proof' that we require . . . suggesting that the

forfeiture proceedings . . . are so punitive in form and effect as to render them criminal despite Congress' intent to the contrary." *Id.* at 2148. Having thus concluded, the Supreme Court held in each case that "these *in rem* civil forfeitures are neither 'punishment' nor criminal for purposes of the Double Jeopardy Clause." *Id.* at 2149. The Court's basic rationale was that the civil *in rem* forfeitures there involved were remedial civil sanctions, distinct from potentially punitive *in personam* civil penalties, such as fines, and were not "punishment," as such, under the Double Jeopardy Clause.

The instant case is, in our view, indistinguishable from *Ursery, supra,* and on that basis we affirm the judgment of the district court.

Judgment affirmed.