UNITED STATES of America, Plaintiff–Appellee,

v.

William J. ALT, M.D.; Rosalinda Alt; Karen Alt; Robert W. Alt, Defendants,

William J. Alt, M.D., Defendant– Appellant.

No. 95–1124.

United States Court of Appeals, Sixth Circuit.

Argued April 16, 1996.

Decided May 15, 1996.

---

Gary R. Allen, Acting Chief (briefed), Charles E. Brookhart, William J. Patton (argued), Laurie Snyder, U.S. Dept. of Justice, Appellate Section Tax Div., Washington, DC, for U.S.

Allan A. Ackerman (argued and briefed), Chicago, IL, for William J. Alt.

William J. Alt, Nunica, MI, pro se.

Rosalinda Alt, Nunica, MI, pro se.

Robert W. Alt, Nunica, MI, pro se.

Before: MILBURN and BOGGS, Circuit Judges; and BORMAN, District Judge.*

PER CURIAM.

Dr. William Alt appeals a civil verdict for the plaintiff United States in an action to collect back taxes, interest, and statutory penalties under the Internal Revenue Code. Alt, who had already pled guilty to criminal charges of income tax fraud, contends that the award of statutory penalties to the government violates the Double Jeopardy and Excessive Fines Clauses of the Constitution. The district court rejected Alt's defense, holding that the award of tax penalties was not "punishment" under *United States v. Halper*, 490 U.S. 435, 447–48, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989). We affirm.

## I

In January 1991, a jury found Dr. William Alt and his daughter, Karen Alt, guilty of various federal income tax crimes. The United States District Court for the Western District of Michigan sentenced Alt to ten years in prison, and ordered him to pay a $200,000 fine. Alt appealed. This court reversed his conviction on the ground that the district court gave the jury an improper in-

---

* The Honorable Paul D. Borman, United States District Judge for the Eastern District of Michi- gan, sitting by designation.

struction, and remanded the case for a new trial. *United States v. Alt,* 996 F.2d 827, 828–830 (6th Cir.1993). On May 24, 1994, Alt pled guilty to a misdemeanor offense and was sentenced to time served.

On September 15, 1992, while Alt's original appeal was pending, the United States filed a civil action against Alt seeking back taxes, various statutory penalties for fraud, understatement, and negligence, and interest on these amounts. The parties and the district court agreed to try the factual elements of the case on November 8, 1994, but to address any constitutional claims by Alt in post-trial briefs. The United States proved its affirmative case at trial, Alt offering no evidence to the contrary. On November 28, 1992, Alt filed a post-trial brief arguing that a verdict in favor of the government would violate the Double Jeopardy Clause.

The district court held that the tax penalties were "civil [rather than] punitive in nature"—and were not "punishment" for the purposes of the Double Jeopardy Clause. Alt filed a timely notice of appeal.

## II

■■■ The Double Jeopardy Clause forbids a second punishment for a single offense. *United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). The parties do not dispute that Alt was punished once for his tax offenses. *See United States v. Ursery,* 59 F.3d 568, 572 (6th Cir.1995), *cert. granted,* — U.S. ——, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996) (jeopardy attaches when court accepts guilty plea). The sole issue before us is whether the assessment of tax penalties is another "punishment." A civil award is punishment whenever it "cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes." *Halper,* 490 U.S. at 448, 109 S.Ct. at 1902.

The tax penalties at issue in this case are authorized by 26 U.S.C. §§ 6653(a), 6653(b), and 6661. These sections are located in Chapter 68 of the Internal Revenue Code ("Additions and Penalties"), next to other civil additions to taxes, such as the penalty for not filing a return on time, § 6651, or the penalty for bringing a frivolous action in court, § 6673. The criminal provisions of the Code are located at § 7201 *et seq.* in Chapter 75 ("Crimes"). The Code instructs that the civil penalties are to be assessed, collected, and paid in the same manner as normal taxes. 26 U.S.C. § 6662(a)(1) and (2).

The Supreme Court has held that a civil tax "addition" for a fraudulent filing serves only a remedial purpose, and does not constitute punishment for the purposes of double jeopardy analysis. *Helvering v. Mitchell,* 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938). *Accord Traficant v. Commissioner,* 884 F.2d 258, 263 (6th Cir.1989). In *Mitchell,* the federal government indicted Mitchell for tax fraud. After a jury acquitted Mitchell, the federal government sought tax penalties constituting 50% of the taxes that he did not pay. The Court held that such penalties were not criminal penalties, but were intended by Congress to reimburse the Government for the costs of discovering and recovering losses caused by Mitchell's tax fraud. *Id.* 303 U.S. at 399–405, 58 S.Ct. at 633–36.

Alt argues that the rule expressed in *Mitchell* should be set aside because of three recent cases: *Halper,* 490 U.S. at 435, 109 S.Ct. at 1892; *Dept. of Revenue of Montana v. Kurth Ranch,* — U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994); and *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). Each of these cases found that a particular civil penalty rose to the level of "punishment." In *Halper,* the defendant Medicare provider made sixty-five false claims, each resulting in a loss to the government of nine dollars. The government prosecuted the defendant for fraud, and the defendant was convicted. The government then filed a separate civil action to recover a $2,000 civil penalty for each of the sixty-five violations. The Court held that a civil penalty "more than 220 times greater than the Government's measurable los[s] qualified as punishment." *Halper,* 490 U.S. at 436, 109 S.Ct. at 1895. In *Kurth,* the defendant was convicted of a federal drug violation. The State of Montana then sought a "tax" from the defendant equal to approximately eight times the market value of the

drugs that the defendant had been convicted of possessing. The Court held that this "tax" constituted punishment because it was disproportionately high, conditioned on conviction for the predicate federal crime, and clearly intended to punish. *Id.* —— U.S. at ——, 114 S.Ct. at 1947. In *Austin,* the defendant used his home and small business to store certain drugs. After he pled guilty to state law drug offenses, the federal government sought forfeiture of his home and business. The court held that the civil forfeiture provisions of 21 U.S.C. §§ 881(a)(4) and (a)(7) could not be said to serve solely a remedial purpose, and that they therefore constituted "punishment" for the purposes of Excessive Fines Clause analysis.

■ Together, these three cases clearly suggest that *some* civil tax additions can be punishment. *Halper,* 490 U.S. at 447, 109 S.Ct. at 1901 ("the labels 'criminal' and 'civil' are not of paramount importance"); *Kurth,* —— U.S. at ——, 114 S.Ct. at 1946 ("a tax is not immune from double jeopardy scrutiny simply because it is a tax"). However, the three cases address extraordinary circumstances where a civil penalty either (i) had *no* remedial purpose, or (ii) was several times greater than necessary to achieve a remedial purpose. The three cases do not say that all tax additions are punishment, or even that any civil provision of the tax code is punishment. In fact, the flagship of the three,

*Halper,* cites *Mitchell* as an example of a perfectly acceptable type of civil sanction.

> The relevant teaching of [*Mitchell* and similar cases concerning other types of civil penalties] is that the Government is entitled to rough remedial justice, that is, it may demand compensation according to somewhat imprecise formulas, such as reasonable liquidated damages, without being deemed to have imposed a second punishment for the purpose of double jeopardy analysis. These cases do not tell us, because the problem was not presented in them, what the Constitution commands when one of those imprecise formulas authorizes a supposedly remedial sanction that does not *remotely* approximate the Government's damages and actual costs, and rough justice becomes clear injustice.

*Halper,* 490 U.S. at 446, 109 S.Ct. at 1892 (emphasis added). We read this language in *Halper* to mean that the only civil fraud penalties that constitute "punishment" are those that do not remotely approximate the amount of money that the Government would be entitled to were it simply trying to recoup a loss. *Ibid.*

In Alt's case, the amount of the penalty is a fixed proportion of the taxes that Alt wrongly failed to pay. The principal amounts of the taxes and the penalties are as follows:

| YEAR | TAX DUE | FRAUD PENALTY | UNDERST. PENALTY | NEGLIGENCE PENALTY | TOTAL DUE |
|---|---|---|---|---|---|
| 1981 | $ 83,655 | 0 | 0 | $ 4,183 | $ 87,838 |
| 1982 | $ 78,510 | $ 39,255 | $ 19,627 | $ 3,926 | $ 144,318 |
| 1983 | $ 180,890 | $ 90,455 | $ 45,223 | $ 9,045 | $ 235,158 |
| 1984 | $ 160,170 | $ 80,085 | $ 40,043 | $ 8,009 | $ 288,307 |
| 1985 | $ 68,123 | 0 | $ 17,031 | $ 3,406 | $ 88,560 |
| 1986 | $ 227,466 | $ 170,600 | $ 56,867 | 0 | $ 454,933 |
| 1987 | $ 226,508 | $ 169,881 | $ 56,627 | 0 | $ 453,016 |
| 1988 | $ 213,997 | $ 160,498 | $ 53,499 | 0 | $ 427,994 |
| 1989 | $ 404,708 | $ 303,531 | 0 | 0 | $ 708,239 |
| TOTALS: | $1,644,027 | $1,014,295 | $288,917 | $28,569 | $2,975,808 |

Appellee's Brief at 8. The district court ordered Alt to pay $5,053,042.08 to the United States. The $2,077,234.08 difference between Alt's original liability and the amount he now owes represents interest on the taxes and penalties.

According to the chart above, Alt is liable for an average of eighty-one cents in penalties for every dollar that he fraudulently underpaid. The stated purpose of the tax penalties at I.R.C. §§ 6653(a), 6653(b), and 6661 is to compensate the government for "the costs of investigation, detection, and recovery of . . . lost money." *Barnette v. Commissioner,* 95 T.C. 341, 347–48, 1990 WL 136710 (1990). The penalties are not outra-

geous in light of this purpose. The fraud penalty is the most onerous, set at fifty or seventy-five percent of the lost tax revenue. The heavy penalty for fraud may be explained by the fact that actively fraudulent filings are more difficult to catch than merely negligent ones. The understatement penalty and negligence penalties, set at twenty-five and five percent respectively, are simply not the type of unusual burden that *Halper* was meant to police. *Accord Karpa v. Commissioner*, 909 F.2d 784, 788 (4th Cir.1990) ("[w]e cannot say that a 25% penalty [for understatement] is overwhelmingly disproportionate" to the government's loss). In fact, *Halper* itself distinguished its situation from that of a prior case in which the government recovered double damages for fraud. *Halper*, 490 U.S. at 445–46, 109 S.Ct. at 1900 (citing *Rex Trailer Co. v. United States*, 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149 (1956) (double fraud damages against people falsely claiming to be veterans is not "punishment")).

> [W]e have recognized that in the ordinary case fixed-penalty-plus-double-damages provisions can be said to do no more than make the Government whole.
>
> . . . .
>
> We cast no shadow on these time-honored judgments. . . .

*Halper*, 490 U.S. at 449, 109 S.Ct. at 1902. Since the Supreme Court has reaffirmed its holding that a hundred-percent penalty can be rationally related to the costs of catching and prosecuting fraud, we feel bound to hold that a eighty-one percent penalty can be as well.

■ Of course, a simple comparison of the size of the civil penalty to the amount of probable financial damage will not resolve every case under *Halper*. Other factors, such as Congress's stated purpose and historical ideas about particular remedies, are relevant in determining when someone is "punished" by a particular law. *See Kurth Ranch*, —— U.S. at ——, 114 S.Ct. at 1946 ("neither a high rate of taxation nor an obvious deterrent purpose automatically [makes a] tax a form of punishment"). A convincing discrepancy between the penalty and the actual loss (or anticipated actual loss), however, does seem to be a prerequisite to punishment—at least when a statute offers a remedial reason for the sanction. No convincing discrepancy exists in Alt's case.

Alt tries to avoid *Halper*'s incorporation of *Mitchell* by stressing *Austin* and other cases about civil forfeiture of property used to make or deal drugs. *E.g., United States v. Ursery*, 59 F.3d 568, 572–73 (6th Cir.1995), *cert. granted*, —— U.S. ——, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996); *United States v. $405,089.23 in United States Currency*, 33 F.3d 1210 (9th Cir.1994), *cert. granted*, —— U.S. ——, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996). These cases have not focused specifically on the value of property seized—relying instead on the clear historical and legislative understanding that forfeiture of property used to commit crimes is a punitive measure. As a result, the focus on the *size* of the sanction, important in *Halper*, takes a back seat to a discussion about the abstract *type* of the sanction. *Austin*, 509 U.S. at 621–22, 113 S.Ct. at 2812.

■ Such precedent, however, has little to do with Alt's case. Civil forfeiture is a penalty tied to commission of a criminal offense and unrelated to a specific loss by the government. *See Austin v. United States*, 509 U.S. at 621–22, 113 S.Ct. at 2812 (value of property forfeited varies so radically it cannot be said to be rationally related to cost of enforcing drug laws). A civil tax addition can be collected in the absence of a crime (e.g., for negligent filing) and its amount varies proportionately with the taxes wrongly withheld. Nor is Alt correct to argue that civil forfeiture precedent is relevant because the government, in a pleading before the lower court seeking a forced sale of some of Alt's property to pay his debts, asks for a "civil forfeiture judgment." Appellant's Brief at 14. First, the government's label cannot change the nature of the sanction against Alt. *See Halper*, 490 U.S. at 447, 109 S.Ct. at 1901 ("the labels . . . are not of paramount importance"). Second, forfeiture of real property as a statutory sanction for a criminal offense is different than foreclosure on real property because a party cannot pay a monetary debt. Debt foreclosure has

784

sources of authority firmly within the parameters of "civil" law.

■ Because we hold that the tax penalties awarded against Alt are not "punishment," there is no need to address Alt's claim that the penalties constitute an excessive fine under the Eighth Amendment. Like the Double Jeopardy Clause, the Excessive Fines Clause only protects against "punishment," *see, e.g., Browning–Ferris Indus. v. Kelco Disposal, Inc.,* 492 U.S. 257, 265, 109 S.Ct. 2909, 2915, 106 L.Ed.2d 219 (1989) (a fine is a "payment to a sovereign as punishment for some offense"), and the test for "punishment" is the same under both doctrines. *Austin v. United States,* 509 U.S. at 621–22, 113 S.Ct. at 2812, (applying test from *Halper* to determine if a civil penalty is punishment for the purposes of the Excessive Fines Clause).

### III

Alt was not "punished" by the imposition of the tax penalties. The district court's judgment is therefore AFFIRMED.