In re: HOVAN, INC., Debtor.

STATE OF WASHINGTON, EMPLOY-
MENT SECURITY DEPARTMENT;
Revenue Department; Labor and Indus-
tries Department, Appellants,

v.

HOVAN, INC., Appellee,

Bankruptcy Appeals Clerk, Real–
party–in–interest.

No. 95–35491.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 8, 1996.

Decided Sept. 24, 1996.

Zachary Mosner, Assistant Attorney General, State of Washington, Seattle, Washington, for appellants.

Wanda Jean Reif Nuxoll and Francois L. Fisher, Weinstein, Fischer, Riley, Erickson & Wolf, Seattle, Washington, for debtor/appellee.

Before: BEEZER and O'SCANNLAIN, Circuit Judges; BROWNING,* District Judge.

O'SCANNLAIN, Circuit Judge:

We must decide whether certain state tax obligations are punitive or compensatory for the purpose of determining the priority of bankruptcy claims.

## I

The State of Washington appeals the district court's affirmance of a bankruptcy court's order, which determined that Washington's penalty assessments for state tax obligations were general unsecured claims in the Chapter 11 bankruptcy of debtor Hovan, Inc. Washington contends that the assessments deserve priority status because they are compensatory rather than punitive.

Hovan filed a petition for relief under Chapter 11 of the Bankruptcy Code on August 6, 1993. On behalf of the Washington Departments of Employment Security, Labor & Industries, and Revenue, Washington filed priority claims against Hovan for unpaid taxes including unpaid principal balances, prepetition interest, and penalties. The penalties, which total $5,382.14, are based on percentages that increase with each of the first three months of delinquency.[1] In addition to the percentage-based penalties, the relevant statutes also provide for interest on delinquent payments. Wash. Rev.Code §§ 50.24.040, 51.48.210, 82.32.050.

Hovan's reorganization plan, which was confirmed on June 6, 1994, provides for the full payment of priority tax claims within six years from the date of assessment pursuant to 11 U.S.C. § 1129(a)(9)(C). Hovan accorded priority treatment to Washington's claims for prepetition interest, but classified Washington's penalty assessments as general unsecured claims. Accordingly, Hovan objected to the priority of the penalty portions of Washington's claims.

The bankruptcy court sustained Hovan's objection and declared that the penalty portions did not merit priority status under 11 U.S.C. § 507(a)(7)(G)[2] because they were pu-

---

* The Honorable William D. Browning, United States District Judge for the District of Arizona, sitting by designation.

1. For example, the Employment Security and Labor & Industries penalties are five percent of the tax due for the first month of delinquency; ten percent of the tax due for the second month of delinquency; and twenty percent of the tax due for the third month of delinquency. Wash.

Rev.Code §§ 50.12.220, 51.48.210. The Department of Revenue penalty is ten percent of the tax due for the first month of delinquency and twenty percent of the tax due for the second month of delinquency. Id. at § 82.32.090.

2. After the bankruptcy court's decision, Congress added a new seventh priority and redesignated § 507(a)(7) as § 507(a)(8) without alteration to

**1256**

nitive in nature and not "in compensation for actual pecuniary loss." *In re Hovan, Inc.,* 172 B.R. 974 (Bankr.W.D.Wash.1994). The bankruptcy court denied Washington's motion for reconsideration on October 20, 1994. On April 18, 1995, the district court affirmed the bankruptcy court's decision "[f]or the reasons expressed by the bankruptcy judge." Washington timely filed a notice of appeal.

## II

Section 507(a)(7)(G) grants priority to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss." 11 U.S.C. § 507(a)(7)(G) (West 1993). It is undisputed that Washington's tax claims are "of a kind specified" in section 507(a)(7) because they are "allowed unsecured claims of governmental units." 11 U.S.C. § 507(a)(7). The only issue before us is whether the penalties are "in compensation for actual pecuniary loss." [3]

The bankruptcy court held that the compensatory nature of a penalty must be demonstrated by clear statutory language or legislative history. *Hovan,* 172 B.R. at 976. Finding "no ... indication of compensatory intent in the relevant statutes or their legislative history," the bankruptcy court concluded that the penalties "are punitive in nature and are therefore not entitled to priority status." *Id.* The bankruptcy judge bolstered this conclusion by observing that "[c]ourts addressing the issue of tax-penalty priority have generally found that tax penalties levied in addition to interest, and in particular flat-percent tax penalties, are punitive in nature rather than compensatory." *Id.* at 975 (citations omitted).

On appeal, Washington contends that the bankruptcy court erred in focusing on the plain language and legislative intent of the Washington Legislature instead of on the actual operation of the penalty provisions. *See Carpenter v. Shaw,* 280 U.S. 363, 367–68, 50 S.Ct. 121, 122–23, 74 L.Ed. 478 (1930) (state labels not binding on federal court); *In re King,* 961 F.2d 1423, 1426 (9th Cir.1992) (citations omitted) ("We do not blindly apply state-created labels; instead, we look to the substantive legal attributes that state law affords."). Washington maintains that the plain language of Bankruptcy Code section 507(a)(7)(G) allows its penalties to enjoy priority status. In short, the State argues that the penalty assessments are entitled to priority status because they constitute compensation for actual pecuniary losses associated with the costs of collecting unpaid taxes (e.g., attorneys fees, field agent collection costs, and filing fees).[4]

Washington concedes that the statutes "do not specifically provide for the recovery of such collection costs," but argues that the penalty provisions nevertheless are intended to foster recovery of unpaid costs and fees associated with collecting delinquent tax payments.[5] The State claims that it

---

the content of the provisions relevant to this appeal. Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 304(c), 108 Stat. 4106, 4132 (codified as amended at 11 U.S.C. § 507(a)(8)). Since this case arose under the pre–1994 Bankruptcy Code, we will refer to § 507(a)(7). *See United States v. Reorganized CF & I Fabricators of Utah, Inc.,* —— U.S. ——, —— n. 1, 116 S.Ct. 2106, 2109 n. 1, 135 L.Ed.2d 506 (1996).

**3.** Because the district court summarily affirmed the bankruptcy court's order, essentially we are "reviewing the final order of the bankruptcy court." *In re A & C Properties,* 784 F.2d 1377, 1380 (9th Cir.) (citation omitted), *cert. denied,* 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986). We review de novo the bankruptcy court's legal conclusions. *See In re Palau Corp.,* 18 F.3d 746, 749 (9th Cir.1994).

**4.** Washington's reliance on *United States v. Alt,* 83 F.3d 779 (6th Cir.1996), is misplaced. In *Alt,* the Sixth Circuit held that civil tax penalties did not constitute punishment for the purposes of the Double Jeopardy and Excessive Fines Clauses; the court emphasized that the stated purpose of the assessments is "to compensate the government for 'the costs of investigation, detection, and recovery of ... lost money.'" *Id.* at 782 (citation omitted). *Alt* is inapposite because (1) determining whether a civil penalty is punishment for the purposes of double jeopardy is different from distinguishing between a tax and a penalty in the bankruptcy context; and (2) the court found that the civil penalty in *Alt,* unlike Washington's penalty regime, specifically seeks compensation for the government's costs.

**5.** Washington also concedes that nothing in the legislative history attributes a compensatory function to the penalty provisions. Rather, as support for its contention that the legislature intended the penalty provisions to be compensatory, Washington relies on the following statement by a Department of Revenue Administrative

should be allowed to present evidence of its costs because section 507(a)(7)(G) does not explicitly require compensatory penalty provisions to detail specific costs.[6] Furthermore, Washington contends that the bankruptcy court erred in concluding that (1) escalating percentage penalties are not tied to actual collection costs; and (2) the award of interest in addition to penalties generally indicates that the penalties are not designed to be compensatory. *See Hovan,* 172 B.R. at 975.

■ Washington correctly maintains that courts distinguishing between taxes and penalties in the bankruptcy context should look to the actual operation of the provision in question; indeed, the Supreme Court recently reaffirmed this principle. *United States v. Reorganized CF & I Fabricators of Utah, Inc.,* — U.S. —, —–—, 116 S.Ct. 2106, 2111–14, 135 L.Ed.2d 506 (1996) (citing, *inter alia, United States v. Sotelo,* 436 U.S. 268, 275, 98 S.Ct. 1795, 1800, 56 L.Ed.2d 275 (1978); *City of New York v. Feiring,* 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941); *New Jersey v. Anderson,* 203 U.S. 483, 492, 27 S.Ct. 137, 140, 51 L.Ed. 284 (1906)). Therefore, to determine whether Washington's assessments are noncompensatory penalties, we look behind the statutory label ("penalty") and examine the "actual effects" of the assessments. *See id.* at —,

116 S.Ct. at 2111. The Supreme Court summarized this functional analysis as follows: " 'A tax is an enforced contribution to provide for the support of government; a penalty, as the word is here used, is an exaction imposed by statute as punishment for an unlawful act.' " *Id.* at —, 116 S.Ct. at 2113 (quoting *United States v. La Franca,* 282 U.S. 568, 572, 51 S.Ct. 278, 280, 75 L.Ed. 551 (1931)); *see id.* ("if the concept of penalty means anything, it means punishment for an unlawful act or omission").[7]

Although Washington describes the appropriate test, the State's application of the test to the facts of this case is not persuasive. Under the "actual effects" test, it is clear that Washington's percentage-based penalty provisions are not primarily imposed to compensate the state. The State's contention that it incurs costs in the collection of unpaid taxes is irrelevant because the provisions' "actual effect" has no direct relation to any specific costs incurred by the State. Furthermore, as the district court observed, other courts have held that escalating percentage-based penalties imposed in addition to interest are generally punitive rather than compensatory in effect.

### A

The Tenth Circuit and a bankruptcy court in this circuit have concluded that percent-

---

Law Judge ("ALJ"): "Imposition of the late penalty is viewed primarily as a means to partially compensate the state for the additional expense in collecting taxes that are late or not paid rather than solely as a punitive measure." Determination No. 86–226, 1 WTD 67 (DOR Aug. 13, 1986) (denying petition for waiver of penalties). Washington criticizes the bankruptcy court for not discussing this ruling in the court's published opinion. During the hearing held on September 30, 1994, the bankruptcy judge called the ALJ's ruling "a pretty self-serving kind of declaration." Transcript of Proceeding Before Hon. Karen A. Overstreet (Bankr.W.D.Wash. Sept. 30, 1994). Washington's attorney conceded the self-serving nature of the ALJ's statement, but maintained that the statement "gives some guidance as to the issue that [the Revenue penalty is] intended to partially compensate." Even if the ALJ's statement is entitled to some deference, the statement does not compel the conclusion that the Department of Revenue's penalties are "compensation for actual pecuniary loss" within the meaning of the Bankruptcy Code. There are countervailing considerations that weigh against the ALJ's ruling, which is not binding on us in any case.

6. Although Washington did not provide the bankruptcy court with itemized costs before the court issued its decision, Washington did submit affidavits relating to costs in a motion for reconsideration. With the exception of the Department of Revenue, the affidavits yield amounts well below the statutory penalties. *See* Department of Employment Security Affidavit (costs = $388, penalty = $694.24); Department of Labor & Industries Affidavit (costs = $54.82, penalty = $4,524.09); Department of Revenue Affidavit (costs = $201.50, penalty = $163.81).

7. In *Reorganized CF & I,* the Court considered an exaction under 26 U.S.C. § 4971(a), which requires employers who maintain a pension plan to pay the government ten percent of any accumulated funding deficiency. — U.S. at —, 116 S.Ct. at 2113. The Court concluded that § 4971(a) is not an "excise tax" (under § 507(a)(7)(E)) because its actual effect is punitive; thus, the Court held that the provision "is, for bankruptcy purposes, a penalty to be dealt with as an ordinary, unsecured claim." *Id.* at —, 116 S.Ct. at 2114.

age-based penalties for unpaid taxes were punitive rather than compensatory. *See, e.g., In re Cassidy*, 983 F.2d 161, 164–65 (10th Cir.1992) (holding that IRS' ten percent assessment-labelled a "tax"-on premature withdrawal from pension plan funds was "nonpecuniary loss penalty" and thus not entitled to priority in bankruptcy); *In re E.A. Nord Company, Inc.*, 75 B.R. 634, 637 (Bankr. W.D.Wash.1987) (holding that state default charge of twenty-five percent imposed on debtor for failing to make timely contribution to state fund was "penalty" and not substitute for interest or compensation for actual loss, and thus was not entitled to priority). In *Cassidy*, the Tenth Circuit concluded:

> The penalty is a flat rate penalty bearing no relationship to the direct financial loss of the government. This indicates an intent to punish, not to defray costs. We agree with the district court that this penalty is punitive in nature, and not entitled to priority under Section 507(a)(7)(G).

983 F.2d at 165.

■ Washington contends that these courts have erred in presuming that stepped-up percentage penalty regimes are punitive. In Washington's view, the penalties are tied to costs in the sense that costs increase over time. Moreover, Washington asserts that its penalty provisions should be construed as the equivalent of liquidated damages under the Uniform Commercial Code ("UCC"). *See* U.C.C. § 2–718(1).[8]

■ Washington's contentions lack merit. First, as revealed in *Cassidy* and *Nord*, a percentage-based penalty that makes no reference to specific costs indicates an intent to punish, rather than to compensate. Second, the State's reference to liquidated damages is wholly inapposite. Section 2–718(1) of the UCC presupposes a party's breach of a contract, and there is no contract here (let alone contracting parties in the sense contemplated by the UCC). Moreover, nothing in section 507(a)(7) of the Bankruptcy Code supports

such an analogy. In short, by arguing that percentage-based penalty provisions should receive priority status as simply "reasonable forecasts of just compensation," Washington seeks an exception that would swallow the rule that penalty provisions are not entitled to priority unless they are in compensation for *actual* pecuniary loss.

■ In contrast with the percentage-based assessments here and in *Reorganized CF & I, Cassidy,* and *Nord,* actual compensatory penalties generally are directly tied to specific costs. *See, e.g.,* Wash. Rev.Code §§ 50.32.190 (permitting recovery of "costs, charges, and expenses"), 51.48.220 (permitting recovery of clerk's filing fees and sheriff's service fees).

**B**

Courts have also concluded that tax penalties levied in addition to interest typically are punitive. *See, e.g., In re Healis*, 49 B.R. 939, 942 (Bankr.M.D.Pa.1985) ("Inasmuch as the IRS has assessed interest and penalties against the debtors in this case, we can only presume without evidence to the contrary that those penalties are intended to be punitive in nature. As such, no requirement for priority payment exists for these penalties."); *In re New England Carpet Co., Inc.*, 26 B.R. 934, 936–37 (Bankr.D.Vt.1983) ("[I]t is questionable that a compensatory role should be assigned to these penalties in light of the fact that interest is additionally charged. The pecuniary loss to the City of Winooski is the loss of the use of the tax money. This is precisely the kind of loss that the interest is supposed to compensate.").

■ Washington contends that interest cannot compensate for actual pecuniary loss because this court has held that interest is an integral part of the tax itself. *See In re Mark Anthony Const., Inc.*, 886 F.2d 1101, 1108 (9th Cir.1989) ("Penalties, unlike interest, are not normally considered integral to

---

8. Section 2–718(1) provides:

> Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the

> inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty.

> U.C.C. § 2–718(1).

the tax debt itself. . . .". This contention is meritless. The *Mark Anthony* court specifically held "that interest accruing on taxes due after the filing of a bankruptcy petition is to be treated as an administrative expense of the bankruptcy estate, and consequently afforded first priority status [under 11 U.S.C. § 503(b)]." *Id.* at 1102. Interest clearly compensates for the taxing agency's losses relating to the "time value" of money, and nothing in *Mark Anthony* contradicts this notion. *See also In re Brinegar,* 76 B.R. 176, 178 (Bankr.D.Col.1987) ("A penalty assessment is separate and distinct from the imposition of interest. Interest is assessed by the IRS to compensate for lost monetary value while a penalty is ordinarily charged for failure to act by a certain deadline.").

### III

For the foregoing reasons, we affirm the district court's order affirming the bankruptcy court's final order.

**AFFIRMED.**