**Mushtag M. ANTON,**
**Plaintiff/Counter–**
**Defendant,**

v.

**UNITED STATES of America and Ann M. Veneman, in her capacity as Secretary of Agriculture, Defendants/Counter–Plaintiffs.**

No. CIV. 01–40064.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 30, 2002.

Michael F. Smith, Butzel Long, Michael J. Lavoie, Butzel, Long, Detroit, for Mushtag M. Anton, plaintiff.

Peter A. Caplan, United States Attorney's Office, Detroit, for Department of Agriculture, United States of America, defendants.

## MEMORANDUM OPINION AND ORDER

GADOLA, District Judge.

Before the Court are the parties[1] cross-motions for summary judgment. Pursuant

to Local Rule 7.1(e)(2), the Court will determine these motions without a hearing. For the reasons set forth below, the Court shall deny Plaintiff's motion [docket entry 15] and grant Defendant's motion [docket entry 14].

## I. BACKGROUND

The facts of this case are largely undisputed. Plaintiff Mushtag Anton is the former owner and operator of Grandy Market, a retail food market located in Detroit, Michigan. Defendant is the United States. Grandy Market was a participant in the food stamp program administered by the United States Department of Agriculture's ("U.S.D.A.") Food and Nutrition Service ("FNS"). An investigation in late 1990 and early 1991 revealed that, on five occasions between August 28, 1990 and January 11, 1991, Plaintiff accepted food stamps worth a total of $1,285.00 for which he paid $883.00 in cash.

On December 7, 1992, the FNS administratively charged Plaintiff with trafficking in food stamp coupons. In a letter dated January 13 1993, the FNS notified Plaintiff that he was permanently disqualified from the food stamp program. In the January 13, 1993, letter Plaintiff was also informed that he would be subject to a civil money penalty pursuant to 7 C.F.R. § 278.6(f)(2) should he ever sell or transfer his store.

Plaintiff was also charged criminally for unauthorized acquisition and possession of food stamps in violation of 7 U.S.C. § 2024(b)(1). On October 20, 1992, Plaintiff pled guilty and was sentenced to three months of imprisonment and two years of supervised release, and was assessed a $500.00 fine. Plaintiff was also ordered to

1. Although Plaintiff has named both the United States and the Secretary of Agriculture as defendants, only the United States is a proper defendant pursuant to 7 U.S.C. § 2023(a)(13). Therefore, the Court shall refer to the singular "Defendant" in this order. In addition, for ease of reference, the Court shall refer to Plaintiff/Counter–Defendant simply as "Plaintiff" and Defendant/Counter–Plaintiff simply as "Defendant."

pay restitution to the U.S.D.A. in the amount of $1,285.00. Plaintiff fulfilled the terms of his sentence and paid the required restitution.

On June 1, 2000, Plaintiff sold Grandy Market for $1,000. Plaintiff alleges that he decided to sell the market after two individuals shot at him in the process of robbing his market. Because Plaintiff sold Grandy Market after being permanently disqualified from the food stamp program, on June 7, 2000, the FNS assessed a civil money penalty of $31,360 pursuant to 7 C.F.R. § 278.6(f)(2). Plaintiff appealed this penalty administratively, but the Administrative Review Board of the FNS sustained the imposition of the penalty in a decision dated February 14, 2001.

On March 14, 2001, Plaintiff filed the complaint in this Court, seeking de novo judicial review of the FNS's decision to impose the civil money transfer penalty upon him. On May 11, 2001, Defendant filed a counterclaim seeking enforcement of the civil money penalty. Both parties now move for summary judgment. The motions address the following three issues: (1) whether the agency's interpretation of the regulations is arbitrary, capricious, an abuse of discretion, and contrary to law; (2) whether the civil money penalty violates the Double Jeopardy Clause of the Fifth Amendment; and (3) whether the civil money penalty violates the Excessive Fines Clause of the Eighth Amendment.

## II. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Turnpike Comm'n,* 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, where a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is

a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated, "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *see Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *see Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir.1995).

## III. ANALYSIS

### A. CALCULATION OF CIVIL MONEY PENALTY

█ The first issue addressed in the parties' motions is whether the FNS properly calculated Plaintiff's transfer penalty under the applicable regulations. The Court reviews the validity of the administrative action in a trial de novo. 7 U.S.C. § 2023(a)(15). Under this standard, the Court may make its own findings based upon the evidence and is not limited to the administrative record. *Warren v. United States*, 932 F.2d 582, 586 (6th Cir.1991). Plaintiff bears the burden of proving by a preponderance of the evidence that the agency's determination is invalid. *Id.*

The Sixth Circuit has set forth the scope of judicial review under § 2023(a).

"Determination of a sanction to be applied by an administrative agency, if within bounds of its lawful authority, is subject to very limited judicial review." *Woodard v. United States*, 725 F.2d 1072, 1077 (6th Cir.1984) (citing *Kulkin v. Bergland*, 626 F.2d 181, 184 (1st Cir.1980)); *Martin v. United States*, 459 F.2d 300, 301–02 (6th Cir.), *cert. denied*, 409 U.S. 878, 93 S.Ct. 129, 34 L.Ed.2d 131 (1972). Once the trial court has confirmed that the store has violated the statutes and regulations, the court's only task is to examine the sanction imposed in light of the administrative record in order to judge whether the agency properly applied the regulations, *i.e.*, whether the sanction is "unwarranted in law" or "without justification in fact." *Woodard*, 725 F.2d at 1077 (quoting *Butz v. Glover Livestock Comm'n Co., Inc.*, 411 U.S. 182, 185–89, 93 S.Ct. 1455, 1458–59, 36 L.Ed.2d 142 (1973)). If the agency properly applied the regulations, then the court's job is done and the sanction must be enforced. The trial *de novo* is limited to determining the validity of the administrative action; the severity of the sanction is not open to review. *Woodard*, 725 F.2d at 1078 (quoting H.R.Rep. No. 464, 95th Cong., 1st Sess. 397–98, *reprinted in* 1977 U.S.C.C.A.N. 1978, 2326–27).

*Goldstein v. United States*, 9 F.3d 521, 523 (6th Cir.1993).

Defendant contends that, pursuant to the standard set forth in *Goldstein*, this Court is without jurisdiction to review the FNS's sanction in this case. The Court disagrees. Although the Court is preclud-

ed from reviewing the *severity* of the sanction, the Court may still inquire "whether the agency properly applied the regulations, *i.e.*, whether the sanction is 'unwarranted in law' or 'without justification in fact.'" *Goldstein*, 9 F.3d at 523 (citations omitted).

■ Here, Plaintiff admits the underlying violations and appears to concede that a civil money penalty is warranted. Plaintiff's argument is that the agency improperly calculated his transfer penalty by misinterpreting its regulations. In this regard, Plaintiff contends that the FNS's interpretation and application of its regulations was arbitrary, capricious, an abuse of discretion, and contrary to law, and that the Court has the power to set aside the sanction under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). In light of the nature of Plaintiff's challenge, the Court concludes that it retains jurisdiction to review whether the FNS properly applied its regulations in calculating Plaintiff's civil money penalty.

■ The United States Court of Appeals for the District of Columbia Circuit has aptly summarized the standard under which a court may review an administrative agency's choice of sanction. *See Wonsover v. SEC.*, 205 F.3d 408, 412 (2000). In *Wonsover*, the court noted that review of an administrative agency's sanction is governed by both the Administrative Procedure Act and Supreme Court precedent. *Id.* "The APA limits our inquiry to whether the Commission's sanction was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' and the Supreme Court has told us not to disturb the Commission's choice of sanction unless it is either 'unwarranted in law or ... without justification in fact.'" *Id.* (internal citations omitted). Under both of these standards, "'[t]he main point is that a court should not second-guess the judgment of the [agency] in connection

with the imposition of sanctions, unless the [agency] has acted contrary to law, without basis in fact or in abuse of discretion.'" *Id.* (citation omitted). Pursuant to this standard, the Court shall review whether the FNS properly applied its regulations in calculating Plaintiff's civil money penalty.

Section 2021(e)(1) of the Food Stamp Act provides, in relevant part:

> In the event any retail food store or wholesale food concern that has been disqualified under subsection (a) of this section is sold or the ownership thereof is otherwise transferred to a purchaser or transferee, the person or persons who sell or otherwise transfer ownership of the retail food store or wholesale food concern *shall be subjected to a civil money penalty in an amount established by the Secretary through regulations to reflect that portion of the disqualification period that has not yet expired. If the retail food store or wholesale food concern has been disqualified permanently, the civil money penalty shall be double the penalty for a ten-year disqualification period, as calculated under regulations issued by the Secretary.*

7 U.S.C. § 2021(e)(1) (emphasis added).

USDA regulations provide that if a retail food store that is disqualified from the food stamp program is sold, the seller:

> shall be subjected to and liable for a civil money penalty in an amount to reflect that *portion of the disqualification period that has not expired*, to be calculated using the method found at § 278.6(g). If the retail food store or wholesale food concern has been *permanently disqualified, the civil money penalty shall be double the penalty for a ten year disqualification period.*

7 C.F.R. § 278.6(f)(2) (emphasis added). The FNS calculates the penalty according to the following formula:

(1) Determine the firm's average monthly redemptions of coupons for the 12–month period ending with the month immediately preceding that month during which the firm was charged with violations.

(2) Multiply the average monthly redemption figure by 10 percent.

(3) Multiply the product arrived at in paragraph (g)(2) by the number of months for which the firm would have been disqualified under paragraph (e) of this section.

The civil money penalty may not exceed an amount [of $11,000] for each violation.

7 C.F.R. 278.6(g).

Applying the regulations, the FNS calculated Plaintiff's civil money penalty as follows. First, the FNS determined that Grandy Market redeemed $24,123 in food stamps during the twelve month period prior to its disqualification, which equals average monthly redemptions of **$2,010.** (AR at 33)[3]; *see* 7 C.F.R. § 278.6(g)(1). Next, the FNS multiplied this figure by ten percent, yielding a product of **$201.** (AR at 33); *see* 7 C.F.R. § 278.6(g)(2). Finally, the FNS multiplied $201 by 156 months to reach the civil money penalty amount of **$31,360.** (AR at 33); *see* 7 C.F.R. § 278.6(g)(3). As Plaintiff committed five separate violations, the maximum penalty permissible under the regulations was $55,000. (AR at 33); *see* 7 C.F.R. § 278.6(g). However, because the formula yielded a penalty of $31,360, which is less than the permissible maximum, the maximum penalty was not implicated in the calculation.

Plaintiff challenges only one aspect of the FNS's calculation. Specifically, Plaintiff contends that the FNS misinterpreted the language of the regulation which states: "[i]f the retail food store or wholesale food concern has been disqualified permanently, *the civil money penalty shall be double the penalty for a ten-year disqualification period.*" 7 U.S.C. § 2021(e)(1) (emphasis added). Applying this language, the FNS *began* its calculations based upon a *240 month* (20 year) disqualification period. Then, the FNS credited Plaintiff with the number of months since his disqualification. Plaintiff sold his store 84 months after disqualification; therefore, the FNS reduced the 240 month period by 84 months, arriving at a period of 156 months. Multiplying this period by $201, as required by § 278.6(g)(3), yielded the civil money penalty of $31,356, which the FNS rounded to $31,360.

Plaintiff argues that the FNS's interpretation of this language is arbitrary and capricious, an abuse of discretion, and contrary to law. Plaintiff contends that the words "double the penalty for a ten year disqualification period" require the FNS to *begin* its calculations with a period of *120 months* (10 years). Then, Plaintiff argues, the FNS must reduce that period by the number of months since disqualification, and multiply the result as required by § 278.6(g)(3). Only after calculating the penalty based upon a 120 month period, asserts Plaintiff, should the FNS *double* the penalty. Under Plaintiff's interpretation, the 120 month period would be reduced by 84 months, to 36 months. Then, Plaintiff would multiply this period by $201 to yield an amount of $7,236. Plaintiff asserts that this amount is the penalty for

---

**3.** Citations denoted "AR" are to the Certified Administrative Record, attached as exhibit 1

to Plaintiff's motion for summary judgment.

a ten year disqualification period, which FNS should then double to reach a total penalty of $14,472.

The Court begins its analysis by noting that "[a]n administrative agency's interpretation of its own regulations is entitled to substantial deference." *Ohio Cast Prods. Inc. v. Occup. Safety & Health Rev. Comm'n,* 246 F.3d 791, 794 (6th Cir. 2001); *see R.R. Ventures, Inc. v. Surface Transp. Bd.,* 299 F.3d 523, 548 (6th Cir. 2002). Where a regulatory provision is ambiguous, courts accord substantial deference to the agency's interpretation if that interpretation is reasonable. *Ohio Cast Prods.,* 246 F.3d at 794. Moreover, an agency's interpretation need not be the only reasonable interpretation of the regulation in order for a court to uphold the agency's action. *Id.*

As demonstrated by the parties' differing interpretations of the phrase, "double the penalty for a ten year disqualification period," the Court concludes that the regulation is ambiguous. However, the Court finds that Plaintiff has demonstrated no more than an alternate interpretation of the regulation. As noted, the FNS applies this language by "doubling" the ten year disqualification period, thus calculating the penalty based upon a 240 month (20 year) period. Plaintiff argues that the FNS should first calculate a 120 month (10 year) penalty, and then double that amount. Although Plaintiff offers an alternate interpretation, he has by no means demonstrated that the FNS's interpretation of its regulations is unreasonable.

As the FNS points out, Plaintiff's interpretation yields a different result only because of the credit given for the time since disqualification. If that credit is not taken into account, calculating a ten year penalty and then doubling that penalty yields the same result as calculating the penalty based on a twenty year period. Further, the FNS argues that neither the statute

nor the regulations provide that a permanently disqualified store owner be given such credit for time since disqualification. Although the regulations provide that the "civil money penalty [shall] ... reflect that portion of the disqualification period that has not expired," 7 C.F.R. § 278.6(f)(2); *see* 7 U.S.C. § 2021(e), a *permanent* disqualification, by its terms, does not expire. Thus, it would appear that the FNS is not obligated to reduce the penalty for the period since the permanent disqualification began. To the extent that the FNS nevertheless gave such credit to Plaintiff in this case, Plaintiff actually received a benefit under the FNS's calculations. The FNS notes that it has since changed its method of calculating penalties for permanently disqualified store owners, and it no longer gives such credit for time since the disqualification began. The Court concludes therefore that the FNS's interpretation of the regulations was reasonable, and that Plaintiff has not demonstrated that the FNS's action was unwarranted in law or without justification in fact, arbitrary, capricious, an abuse of discretion, or contrary to law.

As final matter, the Court notes that Plaintiff's challenge to the FNS's action appears to be directed solely at the agency's interpretation of its *regulations.* At several points, however, Plaintiff refers to the FNS's interpretation of the statute, rather than simply the regulations. The Court notes this distinction because, to some extent, it affects the proper standard of review. For this reason, the Court shall also set forth the standard of review applicable to a challenge to the FNS's interpretation of the statute that it administers.

As noted above, the statute provides that "[i]f the retail food store or wholesale food concern has been disqualified permanently, the civil money penalty shall be double the penalty for a ten-year disquali-

fication period, as calculated under regulations issued by the Secretary." 7 U.S.C. § 2021(e)(1). Where, as here, "Congress 'has explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation,' and any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." *United States v. Mead Corp.*, 533 U.S. 218, 227, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) (quoting *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

Just as in the regulations, the statute contains the phrase "double the penalty for a ten-year disqualification period." 7 U.S.C. § 2021(e). For the reasons set forth above in connection with the FNS's interpretation of this phrase in the context of the regulations, the Court concludes that the agency's interpretation of the statute through its regulations is not procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute.

Accordingly, as there is no genuine issue of material fact as to whether the FNS properly interpreted its regulations or the statute in calculating Plaintiff's civil money penalty, Plaintiff's motion for summary judgment on this issue is denied, and Defendant's motion on this issue is granted.

## B. DOUBLE JEOPARDY CLAUSE

■ The second issue addressed in the parties' motions is whether the civil money penalty imposed by the FNS violates the Double Jeopardy Clause of the Fifth Amendment. Plaintiff was criminally prosecuted for illegally trafficking in food stamps. Plaintiff argues that the subsequent civil money penalty imposed upon the sale of his store is "grossly disproportionate" and amounts to a second criminal punishment in violation of the Double Jeopardy Clause. The Court notes that it has jurisdiction to review Plaintiff's Double Jeopardy challenge to the agency's action as review of this issue involves a determination of whether the agency's action was unwarranted in law.

The Fifth Amendment provides, in relevant part: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "The [Double Jeopardy] Clause protects only against the imposition of multiple *criminal* punishments for the same offense ... and then only when such occurs in successive proceedings." *Hudson v. United States*, 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (citations omitted).

The Supreme Court in *Hudson* set forth a two-part inquiry for courts to apply when determining whether civil penalties amount to "punishment" for purposes of the Double Jeopardy Clause. *First*, "[w]hether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction." *Id.* Thus, "[a] court must ... ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." *Id.* (internal quotation omitted). *Second*, even if "the legislature has indicated an intention to establish a civil penalty, [a court] [must] inquire[ ] further whether the statutory scheme was so punitive either in purpose or effect as to transfor[m] what was clearly intended as a civil remedy into a criminal penalty." *Id.* (internal quotations and citations omitted) (last alteration in original).

The first prong of the *Hudson* test appears to be undisputed. The plain language of the statute authorizing the transfer penalty reveals Congress' intent that such a penalty would be "civil" in nature.

*See* 7 U.S.C.2021(e) (referring to the imposition of a "civil money penalty"); *see also Traficanti v. United States,* 227 F.3d 170, 177 (4th Cir.2000) (concluding that civil transfer penalty does not violate the Double Jeopardy Clause because the sanction is not a criminal sanction); *cf. Cross v. United States,* 512 F.2d 1212, 1217 (4th Cir.1975) (noting that "disqualification from participation in the food stamp program is not a criminal sanction").

Under the second prong of the *Hudson* test, the Court must apply a number of factors, or "guideposts," first set forth in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), to assess whether the civil money penalty is so punitive in purpose or effect such that it becomes a criminal penalty. The *Kennedy* factors are:

> (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of *scienter*"; (4) "whether its operation will promote the traditional aims of punishment-retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned."

*Hudson,* 522 U.S. at 99–100, 118 S.Ct. 488 (quoting *Kennedy,* 372 U.S. at 168–69, 83 S.Ct. 554) (alteration in original).

The *Hudson* Court cautioned "that these factors must be considered in relation to the statute on its face, and only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* at 100 (internal quotations and citations omitted). This Court now applies the seven *Kennedy* factors to the civil money penalty at issue in this case.

*First,* the civil money penalty is not an "affirmative disability or restraint." This penalty "is certainly nothing approaching the infamous punishment of imprisonment." *Id.* (internal quotations omitted).

*Second,* this penalty is not one that has historically been regarded as punishment. *See id.* (noting that " 'the payment of fixed or variable sums of money [is a] sanction which ha[s] been recognized as enforcible by civil proceedings since the original revenue law of 1789' " (alternations in original)).

*Third,* Plaintiff concedes that a finding of *scienter* is not required to impose the transfer penalty.

*Fourth,* the civil money penalty may promote the traditional aims of punishment-retribution and deterrence. Indeed, the purposes of the civil money penalty is to preserve the integrity of the food stamp program by "deter[ring] Program abuses by stores." *Thakor v. United States,* 55 F.Supp.2d 1103, 1111 (D.Nev.1999) (citing S. Rep. 99–145 (1985) and H.R. Rep No. 99–271(I) (1985)). In this regard, the civil money penalty operates to "prevent[ ] illicit transfer of ownership in order to evade the sanctions of the statute. If no transfer penalty were imposed, [a store owner] could nominally sell his business while retaining de facto control over the enterprise." *Traficanti,* 227 F.3d at 176; *see Objio v. United States,* 113 F.Supp.2d 204, 209 (D.Mass.2000) (noting "that Congress' primary concern was that store owners would seek to evade disqualification by selling the store or otherwise transferring its ownership to a third party"). However, "the mere presence of this purpose is insufficient to render a sanction criminal, as deterrence may serve civil as well as criminal goals." *Hudson,* 522 U.S. at 105, 118 S.Ct. 488 (internal quotation omitted).

However, the transfer penalty also serves the remedial purpose of preserving the integrity of the food stamp program by ensuring that violators do not reenter the program after disqualification. *Cf. United States v. Bizzell* 921 F.2d 263, 267 (10th Cir.1990) (noting that "[r]emoval of persons whose participation in [government] programs is detrimental to public purposes is remedial by definition"); *Hudson*, 522 U.S. at 105, 118 S.Ct. 488 (noting that "the sanctions at issue here, while intended to deter future wrongdoing, also serve to promote the stability of the banking industry").

*Fifth*, the behavior to which this penalty relates, trafficking in food stamps, is criminal. However, "[t]his fact is insufficient to render the money penalt[y] ... criminally punitive." *Hudson*, 522 U.S. at 105, 118 S.Ct. 488 (quoting *United States v. Ursery*, 518 U.S. 267, 292, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996)). "Congress may impose both a criminal and a civil sanction in respect to the same act or omission." *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 82 L.Ed. 917 (1938).

*Sixth*, as noted above in regard to the fourth factor, the civil money penalty can be connected to the rational alternative purpose of preserving the integrity of the food stamp program.

*Seventh*, the penalty is not excessive in relation to the policy goal of securing the food stamp program. On this point, Plaintiff argues repeatedly that the civil money penalty of $31,360 is excessive when compared to the amount for which he sold his market, $1,000, and the amount that he realized through trafficking in food stamps, $402. The Court finds persuasive the FNS's argument on this point:

> [D]isqualification, and a civil money penalty in lieu of disqualification when the latter is made impossible by sale or transfer of the store, are designed to deny an offending store owner the mo-

nies he earned as a result of the food stamp portion of his business. Thus, a civil money penalty is calculated on the basis of a store's average monthly redemption of food stamps for the year prior to the disqualification. Therefore, the regulations make an effort to tailor the amount of the civil money [sic] to the particular store's food stamp redemptions.

Def. Resp. Br. at 12.

Having analyzed the present case under the *Kennedy* factors, the Court concludes that Plaintiff has not presented proof sufficient to override the legislative intent and transform what has been denominated a civil remedy into a criminal penalty. Therefore, the Double Jeopardy Clause does not bar the imposition of this penalty. Accordingly, as there is no genuine issue of material fact as to whether the civil money penalty violates the Double Jeopardy Clause, Plaintiff's motion for summary judgment on this issue is denied, and Defendant's motion on this issue is granted.

## C. EXCESSIVE FINES CLAUSE

 The third issue addressed in the parties' motions is whether a civil money penalty in the amount of $31,360 is excessive and constitutionally impermissible when compared to the $1,000 sale price of Plaintiff's store and the $402 profit that Plaintiff netted from trafficking in food stamps. The Court notes that it has jurisdiction to review Plaintiff's challenge under the Excessive Fines clause as this issue involves a determination of whether the agency's action was unwarranted in law. The Eighth Amendment provides: "Excessive bail shall not be required, *nor excessive fines imposed*, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII (emphasis added). "[A]t the time the Constitution was adopted, 'the word 'fine' was understood to mean a pay-

ment to a sovereign as punishment for some offense.'" *United States v. Bajakajian,* 524 U.S. 321, 327–28, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998) (quoting *Browning–Ferris Indus. v. Kelco Disposal, Inc.,* 492 U.S. 257, 265, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989)). "The Excessive Fines Clause thus limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *Id.* at 328, 118 S.Ct. 2028 (internal quotations omitted); *see United States v. Alt,* 83 F.3d 779, 784 (6th Cir.1996) (holding that "the Excessive Fines Clause only protects against 'punishment'"). For the reasons discussed in connection with Plaintiff's Double Jeopardy argument, the Court concludes that the transfer penalty at issue is not "punishment" for purposes of the Eighth Amendment. Accordingly, Plaintiff's argument under the Excessive Fines Clause is without merit.

■ Even if the Court were to consider the transfer penalty a "fine" under the Eighth Amendment, the penalty does not violate the Excessive Fines Clause. A fine violates the Constitution as excessive "if it is grossly disproportional to the gravity of a defendant's offense." *Bajakajian,* 524 U.S. at 334, 118 S.Ct. 2028. As in his Double Jeopardy argument, Plaintiff mistakenly compares the amount of the civil money penalty to the amount for which he sold his store and the amount he netted through illegal trafficking in food stamps. As the Court explained in the context of the Double Jeopardy argument, however, the regulations direct the FNS to calculate the penalty based upon the store's redemption of food stamps, not the illegal gains or the sale price of the store. As one court has observed, "[n]owhere in the Senate Report is it suggested that the penalty be made to reflect the amount involved in the violation." *Objio,* 113 F.Supp.2d at 210.

Rather, the transfer penalty is designed to prevent a disqualified store owner from evading the disqualification penalty. *See id.* at 209. "As the amount involved in the sale of ineligible goods is often small, a civil money penalty which is made proportionate to that amount is unlikely to have the kind of deterrent effect that the Senate intended." *Id.* at 210; *see also Thakor,* 55 F.Supp.2d at 1111. The situation presented to the court in *Objio* is illustrative. The court noted that:

> No more than $40 worth of goods were sold during each of the seven violations, giving rise to an aggregate of no more than $280 for all the violations. Meanwhile, Objio's store was sold for $15,000. A penalty proportionate to the $280 involved would fail to deter Objio from evading disqualification by selling her store. She would have had sufficient money to cover the penalty and still have made a profit from the sale of her store. Therefore, by adopting the method of calculation in 7 C.F.R. § 278.6(g) and not considering the value of the ineligible goods sold in that the calculation, the Service is merely following Congressional intent. It did not act arbitrarily or capriciously.

*Objio,* 113 F.Supp.2d at 210.

The FNS calculated Plaintiff's penalty based on the amount of food stamp redemptions during the year prior to Plaintiff's disqualification pursuant to the regulations. As noted above, the penalty prescribed under the regulations is not tied to the value of the store or the amount of involved in the violations. Rather, one of the purposes of the fine is to deter abuses of the food stamp program, and an amount equal to the value of the store or the violations would not serve such a purpose. *See Vasudeva v. United States,* 214 F.3d 1155, 1161 (9th Cir.2000) (noting that "trafficking in food

stamps is a serious offense that defrauds the federal government and undermines the viability of an important government program for the needy"). In light of the regulatory basis for calculating the transfer penalty, and the purpose behind the penalty, the Court concludes that Plaintiff's penalty is not grossly disproportional to the gravity of the offense. *See Traficanti*, 227 F.3d at 177 (concluding that $40,000 transfer penalty imposed by the FNS does not violate the Excessive Fines Clause). Thus, the civil money penalty does not violate the Excessive Fines clause of the Eighth Amendment.

Accordingly, as there is no genuine issue of material fact as to whether the civil money penalty violates the Excessive Fines Clause, Plaintiff's motion for summary judgment on this issue is denied, and Defendant's motion on this issue is granted.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Plaintiff's motion for summary judgment [docket entry 15] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment [docket entry 14] is **GRANTED.**

**SO ORDERED.**